**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

PEARSON EDUCATION, INC., ELSEVIER, INC., MCGRAW-
HILL GLOBAL EDUCATION HOLDINGS, LLC, and CENGAGE
LEARNING, INC.,

               Plaintiffs,

   v.

DOE 1 D/B/A ATMI7654; DOE 2 D/B/A BOOKEXPERTS; DOE 3
D/B/A BRTM; DOE 4 D/B/A CAMRIC BOOKS; DOE 5 D/B/A
CLARENCE WOOD; DOE 6 D/B/A DBHC BOOKS; DOE 7
D/B/A HEAVYHOUSE-BOOKS; DOE 8 D/B/A HUGE CRIT;
DOE 9 D/B/A MATTHEW'S BOOK STORE; DOE 10 D/B/A
MEVOUS ENTERTAINMENT; DOE 11 D/B/A NIDIIZ; DOE 12
D/B/A READMORE777; DOE 13 D/B/A ROADRUNNER MUSIC
AND BOOKS BEEP-BEEP, ZIP, BANG!; DOE 14 D/B/A STAY
SMART; DOE 15 D/B/A THELOGANS; and DOE 16 D/B/A
UNITED TWINSTAR and AFARAWAYGALAXY,

               Defendants.

Case No. 1:18-cv-00402-DLC

---

**DEFENDANT DOE 13'S MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

## <u>TABLE OF CONTENTS</u>

<div align="right"><u>**PAGE**</u></div>

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND .................................................................................... 3

        Plaintiff's Allegations ................................................................................ 3

        Doe 13 *aka* Video Quest ......................................................................... 4

ARGUMENT ........................................................................................................... 9

POINT I     THE COURT LACKS PERSONAL JURISDICTION
              OVER VIDEO QUEST ............................................................... 9

      A.     Video Quest is Not Subject to the New York Long Arm Statute ......................... 9

           1.    Section 302(a)(1) ........................................................... 10

           2.    Section 302(a)(3) ........................................................... 11

      B.     Exercising Personal Jurisdiction over Video Quest
           Would Violate Due Process ........................................................ 12

POINT II    PLAINTIFFS HAVE NOT DEMONSTRATED THE
              ELEMENTS NECESSARY FOR INJUNCTIVE RELIEF ................ 14

           Standard for a Preliminary Injunction ................................................ 14

      A.     Plaintiffs Are Not Likely to Succeed on the Merits ..................................... 15

           1.    The Complaint Fails to State a Claim against Video Quest .................... 15

           2.    The First Sale Doctrine Insulates Defendant from
                both Trademark and Copyright Infringement ................................. 17

           3.    There is No Unbroken Chain of Custody of Books
                Sold by Video Quest ....................................................... 18

      B.     Plaintiffs Are Not Likely to Suffer Irreparable
           Injury Absent the Requested Relief ................................................ 19

C.      The Balance of the Hardships Tips Decidedly in Favor
        Of Video Quest ........................................................................................... 20

POINT III      PLAINTIFFS SHOULD BE REQUIRED TO POST A BOND
               IF GRANTED THE PRELIMINARY INJUNCTION ..................................... 22

CONCLUSION ........................................................................................................... 23

# TABLE OF AUTHORITIES

**CASES**                                                                                                    **PAGE**

*Adamou v. Cty. of Spotsylvania, Va.*,
No. 12 Civ. 7789, 2016 WL 1064608 (S.D.N.Y. Mar. 14, 2016) ........................................... 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................ 15, 17

*Atuahene v. City of Hartford*,
10 Fed. App'x 33 (2d Cir. 2001) ........................................................................................ 16

*Bandag, Inc. v. Al Bolser's Tire Stores*,
750 F.2d 903 (Fed. Cir. 1984) ........................................................................................... 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................................................... 15

*Calvin Klein Jeanswear Co. v. Tunnel Trading*,
No. 98 Civ. 5408, 2001 WL 1456577 (S.D.N.Y. Nov. 16. 2001) ........................................... 19

*Cenage Learning, Inc. v. Buckeye Books*,
531 F. Supp.2d 596 (S.D.N.Y. 2008) ................................................................................. 10

*Chloe v. Queen Bee of Beverly Hills, LLC*,
616 F.3d 158 (2d Cir. 2010) ................................................................................................ 9

*Cisco Sys., Inc. v. Huawei Techs., Co.*,
266 F. Supp.2d 551 (E.D. Tex. 2003) ................................................................................ 22

*Cont'l Indus. Grp., Inc. v. Equate Petrochemical Co.*,
586 Fed. App'x 768 (2d Cir. 2014) ................................................................................ 11-12

*Dan-Foam A/S & Tempur-Pedic, Inc. v. Brand Named Beds, LLC*,
500 F. Supp.2d 296 (S.D.N.Y. 2007) ................................................................................. 17

*eBay, Inc. v. MercExchange, LLX*,
547 U.S. 338 (2006) ......................................................................................................... 20

*Enesco Corp. v. Price/Costco Inc.*,
146 F.3d 1083 (9th Cir. 1998) ........................................................................................... 17

*Faiveley Transp. Malmo AB v. Wabtec Corp.,*
559 F.3d 110 (2d Cir. 2009)............................................................................................14, 19

*Four Times Square Assocs., .L.L.C. v. Cigna Invs., Inc.,*
306 A.D.2d 4 (1st Dep't 2003) ...........................................................................................20

*Hidalgo Corp. v. J. Kugel Designs, Inc.,*
509 F. Supp.2d 1247 (S.D. Fla. 2007) ................................................................................18

*Impression Prods., Inc. v. Lexmark Int'l, Inc.,*
137 S. Ct. 1523 (2017)........................................................................................................18

*International Shoe Co. v. Washington,*
326 U.S. 310 (1945) .....................................................................................................12, 13

*Jackson Dairy Inc. v. H.P. Hood & Sons, Inc.,*
596 F.2d 70 (2d Cir. 1979)..................................................................................................14

*Juicy Couture, Inc. v. Bella Int'l, Ltd.,*
930 F. Supp.2d 489 (S.D.N.Y. 2013)..................................................................................20

*Leneau v. Ponte,*
No. 16 Civ. 776, 2018 WL 566456 (S.D.N.Y. Jan. 25, 2018)...............................................16

*Liberty Power Corp., LLC v. Katz,*
No. 10 Civ. 1938, 2011 WL 256216 (E.D.N.Y. Jan. 26, 2011).............................................19

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,*
673 F.3d 50 (2d Cir. 2012)..................................................................................................10

*Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC,*
No. 15 Civ. 8459, 2016 WL 3748480 (S.D.N.Y. July 8, 2016) ........................................10, 11

*McGraw-Hill Global Education Holdings, LLC v. Mathrani,,*
No 16 Civ. 8530, 2017 WL 6343627 (S.D.N.Y. Dec. 12, 2017)..........................................1, 11

*Milliken v. Meyer,*
311 U.S. 457 (1940)............................................................................................................12

*Nassau Roofing & Sheet Metal Co. v. Facilities Dev. Corp.,*
70 A.D.2d 1021 (2d Dep't 1979) ......................................................................................20-21

iv

*Nuance Commc'ns, Inc. v. Abbyy Software House*,
626 F.3d 1222 (Fed. Cir. 2010)....................................................................................13

*Rodriguez v. DeBuono*,
175 F.3d 227 (2d Cir. 1999)..........................................................................................19

*Salinger v. Colting*,
607 F.3d 68 (2d Cir. 2010)......................................................................................19, 20

*The Deal LLC v. Korangy Publ'g, Inc.*,
309 F. Supp.2d 512 (S.D.N.Y. 2004)............................................................................14

*Trader Joe's Co. v. Hallatt*,
835 F.3d 960 (9th Cir. 2016) ........................................................................................17

*Transperfect Translations Int'l, Inc. v. Merrill Corp.*,
No. 03 Civ. 10146, 2004 WL 2725032 (S.D.N.Y. Nov. 30, 2004),
*aff'd*, 159 Fed. App'x 313 (2d Cir. 2005) ...............................................................14, 19

*Tucker Anthony Realty Corp. v. Schlesinger*,
888 F.2d 969 (2d Cir. 1989)..........................................................................................19

*Visual Sciences, Inc. v. Integrated Commc'ns Inc.*,
660 F.2d 56 (2d Cir. 1981)..............................................................................................9

*Waldman Pub. Corp. v. Landoll, Inc.*,
43 F.3d 775 (2d Cir. 1994)............................................................................................14

*Weitzman v. Stein*,
897 F.2d 653 (2d Cir. 1990),
*aff'd*, 963 F.2d 1521 (2d Cir. 1992) ................................................................................9

*Yves Saint Laurent Parfums, S.A. v. Costco Wholesale Corp.*,
No. 07 Civ. 3214, 2012 WL 1551740 (S.D.N.Y. May 2, 2012)...................................19

*Zurich American Ins. Co. v. Dah Sing. Bank, Ltd.*,
No. 03 Civ. 7778, 2004 WL 1328215 (S.D.N.Y. June 15, 2004)................................16

## STATUTES AND OTHER AUTHORITIES

CPLR § 302(a) ...............................................................................................................10

CPLR § 302(a)(1) .......................................................................................................9, 11

CPLR § 302(a)(3) ........................................................................................................................... 9

Fed. R. Civ. Proc. Rule 12(b)(6) ............................................................................................... 15

Defendant Doe 13 *dba* RoadRunner Music and Books Beep-Beep, Zip, Bang!, *aka* Video

Quest, Inc. ("Defendant" or "Video Quest") by and through its undersigned counsel respectfully

submits this memorandum of law in opposition to the motion for a preliminary injunction (Dkt.

No. 7) (the "Motion") of plaintiffs Pearson Education, Inc., Elsevier, Inc., McGraw-Hill Global

Education Holdings, LLC, and Cengage Learning, Inc. ("Plaintiffs").

## PRELIMINARY STATEMENT

Just as Judge Pauley of this Court noted in a similar case filed last year by the same

Plaintiffs and attorneys in this action, "[t]his case is one front of a multi-theater war by major

textbook publishing companies against textbook counterfeiters in this District." *McGraw-Hill*

*Global Education Holdings, LLC v. Mathrani*, No 16 Civ. 8530, 2017 WL 6343627, at * 1

(S.D.N.Y. Dec. 12, 2017).  In any war, however, there are innocent bystanders, and Defendant

Video Quest is one of them.

In the Complaint, Plaintiffs allege (in any entirely conclusory and group pleaded fashion)

that Video Quest sold books that infringe upon Plaintiffs' copyrights and trademarks.  In the

Motion, Plaintiffs seek to restrain Video Quest from continuing to engage in such acts of

infringement.  Due to the nature of Video Quest's business and Amazon's zero tolerance policy

regarding infringement, any such restraint has the ripple effect of completely shutting down

Video Quest's business.  The temporary restraining order previously granted in this case has

already done just that, and the harm Video Quest is suffering as a result gets greater by the day.

Plaintiffs' Motion for a preliminary injunction should be denied for two separate reasons:

*first,* the Court lacks personal jurisdiction over Video Quest; and, *second*, Plaintiffs cannot

establish *any* of the three elements necessary for a preliminary injunction.

Video Quest is a Georgia corporation with its principal and only place of business located

1

in Georgia.  There are no facts alleged in the Complaint or in the Motion that support a finding that Video Quest is subject to the personal jurisdiction of this Court.  And no such facts exist. Accordingly, the Motion should be denied for lack of personal jurisdiction.

Even if Video Quest were subject to the Court's jurisdiction, the Motion still should be denied because Plaintiffs cannot establish a likelihood of success on the merits, irreparable harm, or that a balance of the equities tips decidedly in their favor.  To the contrary, the Complaint, even when amplified by the facts set forth in support of the Motion, fails to state a claim upon which relief could be granted as against Video Quest – never mind state a claim that is likely to succeed on the merits.  The Complaint and Motion allege nothing but threadbare, conclusory allegations as against Video Quest.  Those skeletal allegations do not warrant the issuance of extraordinary relief such as a preliminary injunction.  Further, any claims of infringement against Video Quest are barred by the first sale doctrine and the fact that there is no clear chain of distribution from Video Quest to the Plaintiffs, *i.e.*, the purchaser of the books at issue.

Plaintiffs similarly fail to allege facts establishing they would be irreparably harmed in the absence of the requested injunction.  Plaintiffs instead assert a legal argument that allegations of infringement create a rebuttable presumption of irreparable harm.  But that argument is flawed for two separate reasons.  First, the Complaint and Motion state no *facts* alleging infringement by Video Quest.  Second, it is well-settled that the Second Circuit does not recognize a rebuttable presumption of irreparable harm in infringement cases such as this.

Lastly, given the disastrous effect the temporary restraining order already has had on Video Quest's business due to Amazon's zero tolerance policy, the balance of the equities clearly tip in favor of Video Quest.  Plaintiffs, four of the largest booksellers in the world, are behemoth companies, and it is hard to identify any specific hardship it would suffer absent the

2

requested relief.  Video Quest, on the other hand, is a small business owned by a single individual who relies upon the proceeds from Video Quest to support his family, and this lawsuit has instantaneously shut down its entire business.

Plaintiffs have failed to meet their burden.  The Court should deny the Motion and lift the effects of the temporary restraining order from Video Quest's selling and financial accounts. Nonetheless, should the Court find that a preliminary injunction is warranted, it should narrowly tailor its injunction order to fit Video Quest's alleged actions and order a significant bond.

## FACTUAL BACKGROUND

### Plaintiffs' Allegations

Plaintiffs are four of the world's leading educational publishers.  Cplt. ¶ 2.  Defendants are merchants who allegedly operate online storefronts on Amazon.com.  *Id.* ¶ 3.  The Complaint alleges that through those Amazon storefronts Defendants sell and distribute counterfeit textbooks that infringe Plaintiffs' copyrights and bear unauthorized reproductions of Plaintiffs' federally registered trademarks.  *Id.* ¶ 3.

Further, according to the Complaint, many of Defendants use the Fulfillment by Amazon ("FBA") service offered by Amazon, which allows sellers to outsource warehouse, shipping, and customer service operations to Amazon in exchange for a fee.  *Id.* ¶ 38.  Defendants who use FBA ship their products to one of Amazon's fulfillment centers across the country and Amazon stores, packs, ships, and handles customer service and returns for the seller's goods.  *Id.*

Plaintiffs uncovered the alleged acts of infringement complained of in the Complaint by purchasing and receiving books from Defendants' Amazon storefronts.  *Id.* ¶¶ 50-51.

For the most part, the Complaint lumps Defendants together, asserting collective, generalized or conclusory allegations that are wholly lacking in factual support as to each

Defendant specifically.  Indeed, the *only* allegations Plaintiffs make as to Video Quest specifically are that:

- Video Quest is a merchant offering for sale and selling counterfeit books through its Storefront on Amazon (*id.* ¶ 25);

- Video Quest fulfills at least some of its own orders by shipping or arranging to have a third-party ship books directory to customers (*id.* ¶ 53); and

- Video Quest operates the Roadrunner Storefront and also operates the "Roadrunner_Books" storefront on Bonanza.com (*id.* ¶ 54).

Additionally, in the Declaration of Dan Seymour accompanying Plaintiff's Motion, Plaintiffs provide further detail as to Video Quest's purported acts of infringement, identifying four books Plaintiffs purchased from Video Quest's Amazon storefront, which allegedly are counterfeit, and providing the transaction details for such purchases.  *See* Seymour Decl. Ex. 4.[1]

**Doe 13 *aka* Video Quest**

In the Complaint and Motion, Plaintiffs attempt to cast Defendants as deceitful wrongdoers.  But that is far from the truth with respect to Defendant Doe 13 d/b/a RoadRunner Music and Books Beep-Beep, Zip, Bang! – *aka* Video Quest.

Upon receiving notice of this action, and instead of shirking it as many of the other Defendants have done, Doe 13 immediately and voluntarily identified itself to Plaintiffs as Video Quest, Inc.  *See* Marcacci Decl. ¶ 2.[2]  Video Quest is a Georgia for profit corporation with its principal (and sole) place of business at 1635 Lakes Pkwy, Suite T, Lawrenceville, Georgia

---

[1] References in the form "Seymour Decl. __" are to the Declaration of Dan Seymour dated January 16, 2018 submitted in support of Plaintiffs' Motion (Dkt. No. 13).

[2] References in the form "Marcacci Decl. __" are to the accompanying Declaration of Daniel Marcacci, dated February 9, 2018.

30043.  *Id.* ¶ 3.  It is wholly owned by a single individual, Daniel Marcacci.  *Id.* ¶ 1.  Mr.

Marcacci provides for his family of five with the proceeds from Video Quest.  *Id.* ¶ 4.

Video Quest is in the legitimate business of purchasing used books and reselling them

online.  *Id.* ¶ 5.  It does *not* print or make any counterfeit books.  *Id.*  In addition to selling on

Amazon.com as Amazon Seller *RoadRunner Music and Books Beep-Beep, Zip, Bang*!, Video

Quest sells books through Alibris.com as *ACME Best Books* (fka *ACME Roadrunner Beep Zip*

*Bang*) and through Bonanza.com as *Roadrunner_Books*.  *Id.* ¶ 6.  Video Quest also does business

as eBay Seller *acmetv_roadrunner_beep_beep_zip-bang*.  *Id*.  Video Quest, however, does not

maintain or operate a website from which it sells books directly to consumers.  *Id.*

Video Quest operates with the highest level of business ethics.  *Id.* ¶ 7.  For example, to

prevent allegations, such as those raised in this lawsuit, Video Quest buys from reliable,

trustworthy sources such as the United States Postal Service.  *Id.*  In general, Defendant Video

Quest purchases virtually all of its used books from the United States Postal Auction through its

auction broker, GovDeals.com.  *Id.* ¶ 8.  It is Video Quest's understanding that, in compliance

with governing requirements, every book purchased from the US Postal Auction is inspected by

Postal Inspectors prior to being allowed for sale.  *Id.*  Video Quest has witnessed as many as six

Postal Inspectors on the premises of past auctions.  *Id.*  Video Quest has never had any reason to

believe the books purchased from a US Government auction, from a US federal government

entity, would be infringing or counterfeit.  *Id.*

Video Quest's other sources of books come from B-Stock Solutions (bstock.com) which

resells Amazon's Rental Textbooks at liquidation as copies became obsolete or damaged.  *Id.* ¶ 9.

Like the Postal Auctions, Video Quest had no reason to believe that any of the books from

Amazon's rental supply would not be legitimate.  *Id.*  A very small percentage of books resold

by Video Quest were purchased originally from other resources, typically a drop-ship order to fulfill an item where Video Quest may have been inadvertently out of stock. *Id.* ¶ 10.

Video Quest purchased all four of the purportedly infringing/counterfeit books at issue in this action from US Postal Service auctions in Atlanta, Georgia, which were overseen by US Postal Inspectors. It purchased one of the books from Lot # 11117-078, and the other three books from Lot # 09217-007. *Id.* ¶ 11, Exs. 1-3. At no time did Video Quest have any reason to believe that these books were infringing or counterfeit. *Id.*

Additionally, Video Quest systematically vets each one of its books before sending it off to a third party, such as Amazon. *Id.* ¶ 12. Any book failing to meet exacting standards is discarded – regardless of the monetary loss. *Id.*

Specifically, every book is handled in-house by at least three people who all have been trained in anti-counterfeiting measures according to the standards on stopcounterfeitbooks.com. *Id.* ¶ 13. Books graded as "good" or above typically will have all stickers removed with "goo-gone" and/or a heat gun so that Video Quest can identify any counterfeit appearances clearly and are then cleaned by hand with a degreaser. *Id.* Before and during this cleaning Video Quest employees inspect the books thoroughly. *Id.* Books to be sold as "acceptable" sometimes have stickers removed, but are typically just visually inspected for authenticity without removing the stickers/labels, as students do not expect that level of condition from an "acceptable" book. *Id.* Any book deemed inauthentic is destroyed and put in a garbage dumpster with a ratchet closure over the top lid and monitored with a security camera. *Id.*

All books are packed by at least two personnel into shipment boxes. *Id.* ¶ 14. They are looked at one last time prior to being packed as they are scanned into their boxes one by one. *Id.* All books are inspected one last time with the following criteria in mind:

6

- **Cover Images** - Are the images crisp and clear or do they have an irregular (copied) appearance?

- Is there raised lettering, embossing or foil stamping? Is it consistent with the publisher's standard?

- **Barcode** - Is the barcode Clear?

- **Logo** - Is the trademarked logo crisp and clear?

- **Color uniformity on the pages** - Do the colors of the page edges match, are the thickness of the page bands the same? If there are half-tones on the chapter headings or other pages - are the colors consistent and the width consistent?

- **Page numbers**: Do all the page numbers line up uniformly when thumbing through the book?

- Are all the pages there?  Are there any duplicate pages or chapters?

- **Typographical errors -** Are there any typographical errors in the chapter headings at the tops of the pages?

- Are margins consistent within the chapters?

- **Cover coating -** Is the coating on the cover uniform? Is there any abnormal pealing?

- Does the Title/Author content on the spine line up proportionately and uniformly and is it centered?

- Is the opacity of the paper correct? Does text show through the pages or is it opaque to the standards of the publisher?

- Is the smell of the ink (ammonia) on par with publisher's standards?

- **Paper texture** - Is the paper texture on standard with the publisher?

- Does the binding/spine show abnormal wear for the condition of the book?

- Is headband matching in color to the publisher's normal use? Is the fabric consistent in quality with the publisher's standard?

- Is the glue consistency correct? Is the glue clear? Is there glue overrun?

- For softcover books: Is there abnormal curling on the pages or the cover edges?

*Id*. .

Finally, for books being sold on Amazon, after passing inspection Video Quest sends worthy books to a warehouse specified by Amazon.  *Id.* ¶ 15.  Amazon then may move the books to wherever it sees fit at its discretion and without notice.  *Id.*  Video Quest does not create the

product description for any of the ASINs for the books sold on Amazon.  *Id.* ¶ 16.  Nor does Video Quest take any photographs of the books.  *Id.*

The four books at issue in this case were all FBA orders, and initially were shipped by Video Quest to Amazon's warehouse CLT2 (Charlotte, NC).  *Id.* ¶ 17.  They were later moved by Amazon to MKC6 (Kansas City, KS), and then shipped by Amazon to the customer.  *Id.*  The "customer" of the four books was Plaintiffs' attorneys, and the books were shipped by Amazon to Plaintiffs' attorneys in Rockville, Maryland.  *See* Seymour Decl. Ex. 5.

As a result of this vetting process and safeguards, Video Quest never received a complaint related to a counterfeit book sold prior to this lawsuit. *Id.* ¶ 18.  This clean track-record, over the course of tens of thousands of books sold, speaks volumes.  *Id.*

This single lawsuit, however, has shut down Video Quest's business in its entirety.  *Id.* ¶ 19.  Amazon maintains a zero tolerance policy for acts of infringement, and immediately shuts down the alleged infringer's Amazon *entire* account, prohibiting it from engaging in any business whatsoever.  *Id.* ¶ 20.  Thus, when Amazon was informed about this lawsuit, it immediately shut down Video Quest's account and Video Quest no longer is able to sell *any* goods of any sort through that account.  *Id.* ¶ 21.

Similarly, to comply with the temporary restraining order previously issued in this case, Video Quest was forced to shut down its eBay, Alibris and Bonanza accounts because proceeds from those accounts go directly into the bank accounts/PayPal account of Video Quest being restrained.  *Id.* ¶ 22.  Thus, even though Video Quest uses those accounts to sell many items not related to the books at issue in this action, the ripple effect of the temporary restraining order prevents it from doing so, causing disastrous effects on Video Quest's business.  *Id.*

## ARGUMENT

### POINT I

### THE COURT LACKS PERSONAL JURISDICTION OVER VIDEO QUEST

As an initial matter, "where a plaintiff seeks preliminary injunctive relief," "[a] prima facie showing of jurisdiction will not suffice. . . . A court must have in personam jurisdiction over a party before it can validly enter even an interlocutory injunction against him." *Weitzman v. Stein*, 897 F.2d 653, 659 (2d Cir. 1990), *aff'd*, 963 F.2d 1521 (2d Cir. 1992). "On a motion for an injunction, '[w]here . . . essential facts are in dispute, there must be a hearing and appropriate findings of fact must be made.'" *Visual Sciences, Inc. v. Integrated Commc'ns Inc.*, 660 F.2d 56, 58 (2d Cir. 1981)(internal citations omitted)(citing Fed. R. Civ. P. 52(a)).

In a case involving a federal question, such as this, there are two components to personal jurisdiction over a non-domiciliary: *first*, the forum's long-arm statute, and *second*, constitutional due process. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).

As is set forth below, neither component is established here. New York's long arm statute does not reach Video Quest – a Georgia corporation that purchased books in Georgia, processed the books in Georgia, shipped the books in Georgia to North Carolina, from where the alleged counterfeit books were shipped by Amazon to Kansas and then to a buyer in Rockville, Maryland – and constitutional due process certainly is not met.

### A.    Video Quest is Not Subject to the New York Long Arm Statute

In an effort to establish personal jurisdiction over Defendants, Plaintiffs rely upon Sections 302(a)(1) and 302(a)(3) of New York's long arm statute. Neither Section, however, applies to Video Quest.

9

1.      **Section 302(a)(1)**

Section 302(a)(1) "provides, in pertinent part, that a court 'may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state,' so long as the plaintiff's 'cause of action arise[es] from' that 'transaction.'" *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60 (2d Cir. 2012) (*quoting* N.Y. C.P.L.R. § 302(a)).

Here, Plaintiffs' generalized, vague and collective allegations do not satisfy the standard necessary to establish personal jurisdiction over Video Quest.  Plaintiffs' group-pleaded allegations concerning jurisdiction alone warrant dismissal.  *See, e.g., Cenage Learning, Inc. v. Buckeye Books*, 531 F. Supp. 2d 596, 599 (S.D.N.Y. 2008) ("Lumping all the 'defendants' together for purposes of alleging connections to New York is, however, patently insufficient.").  The court in *Cenage Learning* was clear in holding that each separate defendant "are presumptively entitled to have independent existence – which means that plaintiffs must either establish a basis for subjecting each of them, individually, to the jurisdiction of this Court," or risk dismissal.

Moreover, the case Plaintiffs primarily rely upon, *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, No. 15 Civ. 8459, 2016 WL 3748480, at *1 (S.D.N.Y. July 8, 2016), actually establishes that this Court should *not* exercise personal jurisdiction over Video Quest.  The *Lifeguard Licensing* court held personal jurisdiction existed where defendants were "offering and selling infringing products in New York from their **own** website." *Id*. at *3 (emphasis added).  Here, on the other hand (and despite Plaintiffs' conclusory allegations), there are no allegations that Video Quest operates its own website from which it offers books directly to consumers.  To the contrary, Video Quest does not operate such a website.  Additionally,

Plaintiffs have failed to allege facts that Video Quest operates a "highly interactive website," which is one "that does more than provide information about a product and allows customers to purchase goods on line." Rather, Plaintiffs have not even shown that Video Quest provides any information about a product, let alone more than information. Here, Video Quest did not create the product description for any of the ASINs of the four books at issue. Nor did Video Quest take any photographs of the books.

More importantly, in *Lifeguard Licensing*, the defendant sold goods that were shipped to New York via Amazon.com. 2016 WL 3748480, at *3. Here, Plaintiffs' own records show that the allegedly infringing books were not sold to a New York customer and were, instead, purchased by Plaintiffs' attorneys and shipped by Amazon to Maryland. *See generally* Declaration of Dan Seymour & Ex. 5 (Dkt. No. 13 & 13.5). The court in *McGraw-Hill Global Education Holdings, Inc. v. Mathrani*, 16-cv-8530, 2017 WL 6343627, at *n.3, in connection with another case brought by these same Plaintiffs using the same method to ensnare out of state defendants, recently held that "**personal jurisdiction cannot be premised on Plaintiffs' investigator's test purchases because those textbooks were shipped into Maryland**." (emphasis added).

2. **Section 302(a)(3)**

Section 302(a)(3) "provides jurisdiction where a defendant 'commits a tortious act without the state causing injury to person or property within the state' and that defendant 'expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.' The critical question for assessing where the injury took place for purposes of CPLR § 302(a)(3) is **'where the first effect of the tort was located that ultimately produced the final economic injury.'**" *Cont'l*

11

*Indus. Grp., Inc. v. Equate Petrochemical Co.*, 586 Fed. App'x 768, 771–72 (2d Cir. 2014) (citing cases) (emphasis added).

Here, there is no credible allegation that Video Quest has any information regarding the identity of its purchasers, and there is certainly no credible allegation that Video Quest has information regarding purchasers' locations.  Additionally, Plaintiffs have utterly failed to prove or even allege that Video Quest derives any, let alone, substantial, revenue from interstate commerce in New York.

Exercising personal jurisdiction over Video Quest in New York does not comport with New York's long-arm statute.  For this reason alone, the Court should deny the Motion and restore Defendant's status before the *ex parte* TRO.

**B.**      **Exercising Personal Jurisdiction over Video Quest Would Violate Due Process**

Due process requires that a nonresident defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

Here, not only does Video Quest lack requisite minimum contacts with New York, Video Quest has **no** specific contacts related to this lawsuit.  Video Quest is a foreign corporation. Marcacci Decl. ¶ 3.  It does no business in and has no contacts with New York.  *Id.* ¶ 24.  It does not maintain an office or any financial accounts in New York.  *Id.*  It does not employ any New York residents.  *Id.*  It has never entered into a contract identifying, regulating, or operating under the laws of New York.  *Id.*  Furthermore, Video Quest has never entered into a contract containing a choice of law provision selecting the law of New York.  *Id.* ¶ 25.  Nor has Video Quest ever consented to be subject to the jurisdiction of the courts of New York.  *Id.*  In fact,

Video Quest has never filed suit in New York and, other than the instant lawsuit, has never been forced to defend itself in New York courts. *Id.* And, tellingly, Plaintiffs do not allege otherwise.

Similarly, Video Quest did not purposefully avail itself of the privilege of conducting activities with New York. When Video Quest sent its books to Amazon, its ultimate destination was unknown to it. In fact, Plaintiffs' own records establish that the books at issue in this lawsuit were delivered by Amazon to Maryland, not New York.

Plaintiffs filed suit against Video Quest in New York and served it via electronic means thereafter. Marcacci Decl. ¶ 26. At the time Video Quest was served with process, it had absolutely no ongoing business contacts with or in New York, was not purposefully availing itself of the benefits of New York and certainly was not engaged in substantial activity in or directed at New York. *Id.* Video Quest has not had any substantive activity in New York since it was served and does not have any plans to have such activity in the foreseeable future. *Id.* ¶ 27.

Applying personal jurisdiction in this matter would not be "reasonable and fair." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010). Video Quest operates from a single office in Georgia. To haul Defendant into New York to defend this action simply because the Plaintiffs purportedly reside there and ordered books to be delivered to a Maryland address would be neither reasonable nor fair. *See* Declaration of Dan Seymour & Ex. 5 (Dkt. No. 13 & 13.5).

In short, exercising personal jurisdiction over Video Quest in New York will surely "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.,* 326 U.S. at 316. Under Plaintiffs' version of personal jurisdiction law, Amazon's over 200,000 sellers would be subject to personal jurisdiction in New York simply by selling a single item on Amazon, even if that item was not shipped into New York, without plaintiffs having to allege any other facts.

13

## POINT II

## PLAINTIFFS HAVE NOT DEMONSTRATED THE ELEMENTS NECESSARY FOR INJUNCTIVE RELIEF

### Standard for a Preliminary Injunction

"A preliminary injunction is 'one of the most drastic tools in the arsenal of judicial remedies' and should not be routinely granted." *Transperfect Translations Int'l, Inc. v. Merrill Corp.*, No. 03 Civ. 10146, 2004 WL 2725032, at *4 (S.D.N.Y. Nov. 30, 2004), *aff'd,* 159 Fed. App'x 313 (2d Cir. 2005) (quoting *The Deal LLC v. Korangy Publ'g, Inc.*, 309 F. Supp.2d 512, 520 (S.D.N.Y. 2004)).  A party seeking a preliminary injunction must *clearly* demonstrate the following three elements:  (1) irreparable harm in the absence of the injunction; (2) either (a) a likelihood of success on the merits or (b) sufficiently serious question going to the merits to make them a fair ground for litigation; and (3) a balance of hardships tipping decidedly in the movant's favor.  *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 116 (2d Cir. 2009); *Transperfect Translations Int'l*, 2004 WL 2725032, at *4 (citing *Jackson Dairy Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)).

Additionally, where preliminary injunctive relief is granted, "the relief should be 'narrowly tailored' to fit specific legal violations" and to avoid "unnecessary burdens on lawful commercial activity."  *Faiveley*, 559 F.3d at 120 (quoting *Waldman Pub. Corp. v. Landoll, Inc.*, 43 F.3d 775, 785 (2d Cir. 1994)).

As is detailed below, Plaintiff's motion for a preliminary injunction should be denied in its entirety because it has not established either a likelihood of success on the merits or irreparable harm.  Additionally, the balance of the equities tips decidedly in favor of Video Quest.  Accordingly, Plaintiff's motion should be denied.

**A.**     **Plaintiffs Are Not Likely to Succeed on the Merits**

      Plaintiffs cannot establish they are likely to succeed on the merits.  The Complaint's threadbare allegations as to Video Quest could not even withstand a motion to dismiss.  Even if it could, the Complaint as against Video Quest would fail under the first sale doctrine and because it fails to establish the requisite unbroken chain of custody.

      **1.**     **The Complaint Fails to State a Claim against Video Quest**

      Plaintiff's Complaint as against Video Quest, even if considered along with the facts alleged in the Motion, could not even withstand a motion to dismiss pursuant to Rule 12(b)(6), never mind succeed on the merits.

      To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts that, if "accepted as true . . . 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  A claim is facially plausible only if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Conclusory allegations and legal conclusions are not presumed to be true.  *Id.*  Nor are "formulaic" or "threadbare" recitations of the elements of a claim.  *Twombly*, 550 U.S. at 555

      Here, the **only** allegations in the Complaint as to Video Quest specifically are that: (i) Video Quest is a merchant offering for sale and selling counterfeit books through its Storefront on Amazon; (ii) Video Quest fulfills at least some of its own orders by shipping or arranging to have a third-party ship books directory to customers; and (iii) Video Quest operates the Roadrunner Storefront and operates the "Roadrunner_Books" storefront on Bonanza.com. (*See* Cplt., ¶¶ 25, 53, 54).  Additionally, in the Motion, Plaintiffs allege that they purchased four specific books from Video Quest through Amazon, along with transaction detail.  *See* Seymour

Decl. Ex. 4.

The mere purchase and sale of books, however, does not establish a claim of infringement or counterfeiting.  And both the Complaint and the Motion are devoid of *any* facts stating how or why the books purchased from Video Quest are allegedly infringing/counterfeit. Instead, they contain only conclusory and collective allegations as to all of Defendants' books generally, and fail to identify **any** specific facts regarding the four books allegedly sold to Plaintiffs by Video Quest.  *See, e.g.*, Motion, p 13 ("Among other differences, the binding, glue, paper, color and printing are often different and inferior.").  Simply alleging in an entirely conclusory fashion that a book is counterfeit or infringing, without more, does not state a claim of infringement.

Further, while the Complaint recites a litany of allegations as against all "Defendants" collectively, those allegations must not be considered on a motion to dismiss.  Indeed, "complaints that rely on 'group pleading' and 'fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim.'"  *Leneau v. Ponte,* No. 16 Civ. 776, 2018 WL 566456, at *15 (S.D.N.Y. Jan. 25, 2018) (quoting *Adamou v. Cty. of Spotsylvania, Va.*, No. 12 Civ. 7789, 2016 WL 1064608, at *11 (S.D.N.Y. Mar. 14, 2016)); *see Atuahene v. City of Hartford*, 10 Fed. App'x 33, 34 (2d Cir. 2001) (Federal Rule of Civil Procedure 8 "requires, at a minimum, that a complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests,'" and that a complaint fails to meet that minimum where it "lump[s] all the defendants together in each claim and provide[s] no factual basis to distinguish their conduct"); *Zurich American Ins. Co. v. Dah Sing. Bank, Ltd.*, No. 03 Civ. 7778, 2004 WL 1328215, at *6 (S.D.N.Y. June 15, 2004) (Cote, J.) ("The Amended Complaint does not include a single factual allegation against Union Bank in support of any of

16

these claims. Instead, it lumps the three bank defendants together and asserts that they collectively processed the checks.  This type of group pleading is inadequate to state a claim against Union Bank.").

Moreover, as is explained in the Declaration of Daniel Marcacci, Plaintiffs' conclusory and group pleaded allegations of infringement and counterfeiting are not even true.  To the contrary, Video Quest is simply a *bona fide* reseller of **authentic** books.

In sum, the entirety of Plaintiffs' allegations as to Video Quest consist of "'naked assertion[s]' devoid of 'further factual enhancement,'" which are insufficient to survive a motion to dismiss.  *Ashcroft v. Iqbal*, 129 S. Ct. 1927, 1949 (2009) ("[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'").  As such, Plaintiffs' claims as against Video Quest certainly are not likely to succeed on the merits, and Plaintiffs' Motion should be denied.

### 2. The First Sale Doctrine Insulates Defendant from both Trademark and Copyright Infringement Liability

Plaintiffs' claims as against Video Quest also will fail because they are barred by the first sale doctrine, which insulates Video Quest's purchase and resale of used books.

Under the first sale doctrine, "resale by the first purchaser of the original article under the producer's trademark is generally neither trademark infringement nor unfair competition."  *See Enesco Corp. v. Price/Costco Inc.*, 146 F.3d 1083, 1085 (9th Cir. 1998); *Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 970 (9th Cir. 2016); *see Dan-Foam A/S & Tempur-Pedic, Inc. v. Brand Named Beds, LLC*, 500 F. Supp.2d 296, 326 (S.D.N.Y. 2007) ("The first sale doctrine only ensures that an unauthorized distributor of a trademarked item is not liable for trademark infringement or dilution when the distributor 'resell[s] a branded item in an *unchanged* state.'") (emphasis in original).

17

The first sale doctrine similarly applies to copyrighted works.  "[O]nce a copy [of a copyrighted work] has been lawfully sold (or its ownership otherwise lawfully transferred), the buyer of that **copy** and subsequent owners are free to dispose of it as they wish.  In copyright jargon, the 'first sale' has 'exhausted' the copyright owner's § 106(3) exclusive distribution right."  *Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 137 S. Ct. 1523, 1527 (2017) ("when a copyright owner sells a lawfully made copy of its work, it loses the power to restrict the purchaser's freedom 'to sell or otherwise dispose of . . . that copy'").

Here, the first sale doctrine bars Plaintiffs' claims against Video Quest.  More specifically, Video Quest merely stocked its Amazon inventory with and sold authentic books.  Those books were initially purchased by Video Quest legally at a US Postal Service auction.  By at least the date of Video Quest's purchase of the books, Plaintiffs' trademark and copyright rights were exhausted.

Additionally, Video Quest did not engage in actions that would remove it from the first sale doctrine's protections, as Video Quest did nothing more than merely stocking and reselling the books at issue.  *Hidalgo Corp. v. J. Kugel Designs, Inc.*, 509 F. Supp. 2d 1247, 1260 (S.D. Fla. 2007) (citing *Bandag, Inc. v. Al Bolser's Tire Stores*, 750 F.2d 903, 916 (Fed. Cir. 1984)).

### 3.      There is No Unbroken Chain of Custody of Books Sold by Video Quest

Plaintiffs also are not likely to succeed on the merits because they do not establish, and in fact do not even attempt to allege, any facts establishing a clear chain of distribution of the four books at issue from Video Quest to Plaintiffs.  Plaintiffs have offered no identifying evidence that the books Video Quest purportedly sent to Amazon all the same books that Amazon delivered to Plaintiffs, and it is unclear if Amazon commingles the books upon receipt at one of its warehouses.  Moreover, no evidence exists that if they are Defendant's books, that they are in

18

an unaltered state from one Defendant last possessed them.

Plaintiffs' failure to allege these facts, and their likely failure to be able to establish these facts at trial, is damning to their likelihood of success. *See Yves Saint Laurent Parfums, S.A. v. Costco Wholesale Corp*., No. 07 Civ. 3214, 2012 WL 1551740, at \* 2 (S.D.N.Y. May 2, 2012) (denying summary judgment on infringement claim due to genuine issues of material facts as to chain of distribution); *Calvin Klein Jeanswear Co. v. Tunnel Trading*, No. 98 Civ. 5408, 2001 WL 1456577, at \*10 (S.D.N.Y. Nov. 16. 2001) (denying summary judgment despite plaintiff "submit[ing] declarations purporting to establish a clear chain of custody of the counterfeit jeans in question").

**B.      Plaintiffs Are Not Likely to Suffer Irreparable Injury Absent the Requested Relief**

A showing of irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley*, 559 F.3d at 118 (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)). To establish irreparable harm, a plaintiff must demonstrate "an injury that is neither remote nor speculative, but actual and imminent." *Transperfect Translations Int'l*, 2004 WL 2725032, at \*4 (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989)). In this analysis, "the court must actually consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits, paying particular attention to whether the 'remedies available at law, such as monetary damages, are inadequate to compensate for that injury.'" *Liberty Power Corp., LLC v. Katz*, No. 10 Civ. 1938, 2011 WL 256216, at \*5 (E.D.N.Y. Jan. 26, 2011) (quoting *Salinger v. Colting,* 607 F.3d 68, 80 (2d Cir. 2010)); *Faiveley*, 559 F.3d at 118.

Here, Plaintiffs fail to demonstrate they will suffer **irreparable** harm if the Court does not issue the preliminary injunction.

19

As an initial matter, while Plaintiffs argue that irreparable harm is established pursuant to a rebuttable presumption applied to infringement cases such as this, there is no such rebuttable presumption recognized in the Second Circuit.  Indeed, in *Salinger v. Colting,* the Second Circuit held that "categorical" or "general" rules should not be used in applying the preliminary injunction standard to copyright cases, and noted that such rules should not be used in *any* type of case.  607 F.3d 68, 80 (2d Cir. 2010) (citing *eBay, Inc. v. MercExchange, LLX*, 547 U.S. 338, 397 (2006)); *see also Juicy Couture, Inc. v. Bella Int'l, Ltd.*, 930 F. Supp.2d 489, 503 (S.D.N.Y. 2013) (rejecting presumption of irreparable harm in trademark case stating, "irreparable harm may not be presumed upon a showing of likelihood of success on the merits").

Even if there were a rebuttable presumption (which there is not), as is set forth above, Plaintiffs do not even plausibly allege that Video Quest sold and distributed infringing/ counterfeit books.  *Supra,* at Point II (B).  Conclusory assertions of infringement and counterfeiting, without more, far from establish irreparable harm.

Moreover, Plaintiffs have not alleged any facts supporting any other type of harm, such as decreased sales, actual confusion, loss of goodwill or lost profits.  Plaintiffs' failure to do so speaks volumes.  Accordingly, Plaintiffs have failed to establish irreparable harm.

C.     **The Balance of the Hardships Tips Decidedly in Favor of Video Quest**

A plaintiff seeking a preliminary injunction must also demonstrate a balance of the equities in its favor.  *Four Times Square Assocs., .L.L.C. v. Cigna Invs., Inc*., 306 A.D.2d 4, 5 (1st Dep't 2003).  To do so, the plaintiff must show that the irreparable injury to be sustained is more burdensome to the plaintiff than the harm caused to the defendant through the imposition of the injunction.  *Nassau Roofing & Sheet Metal Co. v. Facilities Dev. Corp*., 70 A.D.2d 1021, 1022 (2d Dep't 1979).

Here, the equities strongly tip in favor of Video Quest.  Plaintiffs are four of the largest booksellers in the world.  Video Quest, on the other hand, is a small business owned by a single individual who relies upon the proceeds from Video Quest to support his family, and this lawsuit has instantaneously shut down its entire business.

Specifically, in cases such as this, injunctive relief based upon a sole allegation of infringement has a much larger scope and impact and one would presume from the four corners of the Order granting such relief.  This is because (and as Plaintiffs are well aware due to the numerous other similar cases have filed) Amazon maintains a zero tolerance policy for acts of infringement.  It immediately shuts down the alleged infringer's Amazon *entire* account, prohibiting it from engaging in any business whatsoever.

In fact, Amazon already has closed down Video Quest's entire Amazon account, and Video Quest no longer is able to sell **any** goods of any sort through that account.  Similarly, to comply with the temporary restraining order previously issued in this case, Video Quest was forced to shut down its eBay, Alibris and Bonanza accounts because proceeds from those accounts go directly into the bank accounts/PayPal account of Video Quest being restrained.  Thus, even though Video Quest uses those accounts to sell many items not related to the books at issue in this action, the ripple effect of the temporary restraining order prevents it from doing so.  This has caused and will continue to cause disastrous effects on Video Quest's business.  Moreover, while its funds are restrained, Video Quest has been forced to use Mr. Marcacci's personal funds to keep its business afloat.

Plaintiffs have been provided as a result, relief that far exceeds the bounds of law.  Even if Plaintiffs were entitled to equitable relief, which they are not for the reasons stated above, injunctive relief should be limited to Plaintiffs' books, and not apply to books an goods not

21

distributed by Plaintiffs.

## POINT III

**PLAINTIFFS SHOULD BE REQUIRED TO POST A BOND
IF GRANTED THE PRELIMINARY INJUNCTION**

Pursuant to Federal Rule of Civil Procedure 65(c), if the Court grants preliminary injunctive relief, Plaintiffs should be required to post a substantial security bond equal to the amount of annual revenue Video Quest has earned multiplied times five years. *See Cisco Sys., Inc. v. Huawei Techs., Co*., 266 F. Supp.2d 551, 557 (E.D. Tex. 2003) (requiring plaintiff to post $5,000,000 bond after the court "determined that this amount is appropriate to protect the Defendants in light of the scope of injunction actually issued by the court.").  Video Quest respectfully requests that if Plaintiffs' Motion is granted that the parties be given an opportunity to brief the appropriate bond amount.

22

## **CONCLUSION**

For all of the above reasons, Defendant Doe 13 d/b/a RoadRunner Music and Books Beep-Beep, Zip, Bang!, aka Video Quest, Inc. respectfully requests that Plaintiffs' motion for a preliminary injunction be denied in its entirety, and for such other and further relief as the Court deems just and proper.

Dated: Uniondale, New York
       February 9, 2018

<div style="margin-left: 40%;">

Respectfully submitted,

RUSKIN MOSCOU FALTISCHEK, P.C.

By:_____/s/ Jennifer L. Hartmann_____
       Norman R. Cerullo
       Jennifer L. Hartmann
       1425 RXR Plaza, East Tower, 15th Floor
       Uniondale, New York 11556
       Tel: (516) 663-6600
       Email: ncerullo@rmfpc.com
              jhartmann@rmfpc.com

              -and-

       ATLAWIP LLC
       Jeffrey T. Breloski (*Pro Hac Vice Admission Pending*)
       2065 Compton Way
       Johns Creek, Georgia 30022
       Tel: (678) 667-3491
       Email: jbreloski@ATLawip.com

       *Attorneys for Defendant Doe 13 dba Roadrunner Music And Books Beep-Beep, Zip, Bang!, aka Video Quest, Inc.*

</div>