# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PEARSON EDUCATION, INC.; ELSEVIER, INC.; MCGRAW-HILL GLOBAL EDUCATION HOLDINGS, LLC; and CENGAGE LEARNING, INC., | **Civil Action No. 18-cv-402-DLC** |
| Plaintiffs, | **AMENDED COMPLAINT FOR:** |
| v. | |
| IMRAN AWAN; AMRO T. AWWAD; RONG LI; ANITA RAIN RANI; VIJAY KUMAR; AMMAR ABDULWAHID MAZRUI; MICHAEL PAO (A/K/A MATTHEW WATSON); NIDIA ESPINOZA; MANISH KUMAR SINGH (A/K/A "MAX DEN" and "SHYAM"); ROSCHELLE T. SALMON; and YAROSLAV IAKOVIN, | **1. COPYRIGHT INFRINGEMENT (17 U.S.C. § 101, *et seq.*) ;** **2. SECONDARY COPYRIGHT INFRINGEMENT (17 U.S.C. § 101, *et seq.*);** **3. TRADEMARK INFRINGEMENT (15 U.S.C. § 1114);** **4. TRADEMARK COUNTERFEITING (15 U.S.C. § 1114); and** |
| Defendants. | **DEMAND FOR JURY TRIAL** |

Plaintiffs Pearson Education, Inc., Elsevier, Inc., McGraw-Hill Global Education Holdings, LLC, and Cengage Learning, Inc. (hereinafter, collectively referred to as "Plaintiffs," and each individually as a "Plaintiff"), by and through their undersigned counsel, for their Amended Complaint against Defendants Imran Awan, Amro T. Awwad, Rong Li, Vijay Kumar, Anita Rain Rani, Ammar Abdulwahid Mazrui, Michael Pao (a/k/a Matthew Watson), Nidia Espinoza, Manish Kumar Singh (a/k/a "Max Den" and "Shyam"), Roschelle T. Salmon, and Yaroslav Iakovin (hereinafter, collectively referred to as "Defendants," and each individually as a "Defendant"), allege as follows:

## NATURE OF THE CASE

1.    This is a case involving extensive violations of the federal laws concerning

copyright and trademark infringement.  It arises from the intentional reproduction, importation, distribution, and sale of counterfeit textbooks at the expense of authors, students, publishers and others.

2.      Plaintiffs are four of the world's leading educational publishers.  They provide a comprehensive range of traditional and digital educational content and tools to professionals and students of all ages.

3.      Defendants are merchants, who, upon information and belief, are located across the globe, but conduct business in the United States by means of their online storefronts on Amazon.com (hereinafter, collectively the "Storefronts," and each a "Storefront").  All Defendants sell and distribute counterfeit textbooks on Amazon.  Through their Storefronts, and hiding behind the anonymity of the Internet, Defendants sell counterfeit textbooks that infringe Plaintiffs' copyrights and bear unauthorized reproductions of Plaintiffs' federally registered trademarks. Defendants sell the infringing textbooks to individual consumers, wholesale distributors, and other re-sellers.

4.      Defendants' sale of counterfeit copies of Plaintiffs' textbooks on Amazon, the world's largest e-commerce retailer, causes significant damage to Plaintiffs.  Plaintiffs sell their textbooks through various wholesale and retail channels, including to Amazon.  Plaintiffs' textbook sales on Amazon—whether by Amazon itself, other wholesalers, or third-party sellers— represents an important sales channel for Plaintiffs' textbook.  Defendants advertise, offer, and sell their counterfeit textbooks on Amazon to the same purchasers seeking out legitimate copies of Plaintiffs' textbooks.  Defendants identify the textbooks using the legitimate textbooks' respective titles, editions, authors, cover images bearing Plaintiffs' trademarks, and ISBN (the International Standard Book Number).  Many of Defendants also use Amazon's fulfillment services to ship their

2

counterfeit textbooks.  Defendants often sell their counterfeit copies well below market price for the legitimate books.  In so doing, Defendants undercut sales and the perceived value of authorized and legitimate copies of Plaintiffs' textbooks.

5.      Plaintiffs bring this Amended Complaint for damages and injunctive relief to stop and to seek redress for Defendants' infringement of Plaintiffs' intellectual property rights.

**JURISDICTION AND VENUE**

6.      This is a civil action arising under the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, and the Lanham Act, 15 U.S.C. §§ 1051 *et seq*.  As such, the Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a) and 15 U.S.C. § 1121.

7.      The Court has personal jurisdiction over Defendants pursuant to N.Y. C.P.L.R. § 302, or in the alternative, Federal Rule of Civil Procedure 4(k), because, upon information and belief, Defendants transact business in New York, and committed tortious acts within and/or causing injury to Plaintiffs' in New York, Plaintiffs' claims arise from those activities, and Defendants should reasonably have expected such acts to have consequences in New York and derive substantial revenue from interstate and/or international commerce.  In particular, upon information and belief, Defendants (a) transact business within New York or contract to supply goods, including counterfeit goods, in New York, (b) have committed acts of copyright and trademark infringement and counterfeiting in New York and in this District, and/or (c) have committed acts of copyright and trademark infringement and counterfeiting outside New York causing injury to Plaintiffs in New York, and Defendants expected or should reasonably have expected such acts to have consequences in New York, and Defendants derive substantial revenue from interstate or international commerce.  In addition, Defendants sell textbooks, including counterfeit copies of Plaintiffs' copyrighted textbooks bearing Plaintiffs' trademarks, through

online storefronts on highly interactive websites, such as Amazon.com, which are accessible and sell goods to consumers in New York.

8.      Venue is proper, *inter alia*, pursuant to 28 U.S.C. §§ 1391(b) because, upon information and belief, Defendants conduct, transact, and/or solicit business in this District.

## PARTIES

9.      Plaintiff Pearson Education, Inc. ("Pearson"), is a Delaware corporation with a principal place of business at 330 Hudson Street, New York, New York 10013.

10.     Plaintiff Cengage Learning, Inc., formerly Thomson Learning Inc. ("Cengage"), is a Delaware corporation with offices located in New York.

11.     Plaintiff McGraw-Hill Global Education Holdings, LLC ("MHE") is a Delaware limited liability company with a principal place of business at 2 Penn Plaza, New York, New York 10020.

12.     Plaintiff Elsevier, Inc. ("Elsevier"), is a Delaware corporation with a principal place of business at 360 Park Avenue South, New York, New York 10010.

13.     Defendant Imran Awan is an individual who appears to reside in Pakistan and is a merchant offering for sale and selling counterfeit textbooks through his or her Storefront, Atmi7654 (Seller ID A1CG7ES2FSMS9W), on Amazon.

14.     Defendant Amro T. Awwad is an individual who appears to reside in Jordan and is merchant offering for sale and selling counterfeit textbooks through his or her Storefront, BookExperts (Seller ID A2N0FSW82YCEBR), on Amazon.

15.     Defendant Rong Li is an individual who appears to reside in China and is a merchant offering for sale and selling counterfeit textbooks through his or her Storefront, Clarence Wood (Seller ID A1W0N0RRQL82E1), on Amazon.

4

16.     Defendant Vijay Kumar is an individual who appears to reside in India and is a merchant offering for sale and selling counterfeit textbooks through his Storefront, HEAVYHOUSE-BOOKS (Seller ID A3FMQR7FXRFI0W), on Amazon.

17.     Defendant Anita Rain Rani is an individual who appears to reside in India and is a merchant offering for sale and selling counterfeit textbooks through her Storefront, HEAVYHOUSE-BOOKS (Seller ID A3FMQR7FXRFI0W), on Amazon.

18.     Defendant Ammar Abdulwahid Mazrui is an individual who resides in Canada and is a merchant offering for sale and selling counterfeit textbooks through his Storefront, Huge Crit (Seller ID A3DDSCP3ACKEWO), on Amazon.

19.     Defendant Michael Pao (a/k/a Matthew Watson) is an individual whose address is unknown and is a merchant offering for sale and selling counterfeit textbooks through his Storefront, Matthew's Book Store (Seller ID A2DO668BPH25DT), on Amazon.

20.     Defendant Nidia Espinoza is an individual who resides in Indianapolis, Indiana and is a merchant offering for sale and selling counterfeit textbooks through her Storefront, Nidiiz (Seller ID AXULVU20BNHVF), on Amazon.

21.     Defendant Manish Kumar Singh (a/k/a "Max Den" and "Shyam") is an individual who appears to reside in India and is a merchant offering for sale and selling counterfeit textbooks through his Storefront, STAY SMART (Seller ID A3GO8CXMLXUW0P), on Amazon.

22.     Defendant Roschelle T. Salmon is an individual who appears to reside in New York and is a merchant offering for sale and selling counterfeit textbooks through her Storefront, TheLogans (Seller ID A1SCHPV8CHT0QA), on Amazon.

23.     Defendant Yaroslav Iakovin is an individual who appears to reside in the Russian Federation and is a merchant offering for sale and selling counterfeit textbooks through his

Storefront, United TwinStar (Seller ID A3HUO8588XNGTY) on Amazon.

## FACTUAL ALLEGATIONS

### A.    Plaintiffs' Businesses

24.    Plaintiffs are among the world's largest providers of tailored learning solutions.  In the academic marketplace, Plaintiffs serve secondary, post-secondary, and graduate-level students, teachers, and learning institutions providing quality content, assessment tools, and educational services in all available media.  Plaintiffs' publications include physical textbooks.  These textbooks are widely available in the marketplace for sale or rental, including from physical and online bookstores.  Plaintiffs' products and services are sold throughout the world, through direct channels and via a worldwide network of distributors, including Amazon.

25.    Plaintiffs' publish their works under many imprints, or brands, that are well known and highly respected.  For example, Cengage's imprints include Brooks/Cole, Delmar, Heinle, and South-Western Educational Publishing; Elsevier's imprints include Academic Press, Butterworth Heinemann, Mosby, and Saunders; MHE's imprints include Irwin, Lange, McGraw-Hill Higher Education, among others; Pearson's imprints include Addison Wesley, Allyn & Bacon, Benjamin Cummings, and Prentice Hall.  These are just some of the Plaintiffs' many valuable and recognizable imprints.  For purposes of their claims against Defendants, Exhibit C includes a complete list of Plaintiffs' imprints (the "Imprints").

26.    Plaintiffs invest heavily in publishing their textbooks.  Each year they incur substantial costs for author royalties and other costs of content creation or licensing, copyediting and proofreading, typesetting, layout, printing, binding, distribution, promotion, and for support of their editorial offices.

27.    Plaintiffs and/or their predecessors have also invested decades of effort in building

a reputation of quality in the publishing industry, which consumers associate with Plaintiffs and their trademarks.  Plaintiffs invest significant resources annually in the worldwide advertisement and promotion of their goods and services under their respective marks.  Plaintiffs' Marks and the goodwill of the business associated with them in the United States and throughout the world are of tremendous value and have become associated in the public mind with Plaintiffs' reputation for publishing textbooks of the very highest quality.

28.     Plaintiffs suffer serious financial and reputational injury when their copyrights and trademarks are infringed.  Both publishers and authors alike are deprived of income when their textbooks are unlawfully copied and sold, or when their copyrights are otherwise infringed, which can have serious financial and creative repercussions for them and their work.  A substantial decline in revenue from sales or rentals of Plaintiffs' copyrighted works could cause Plaintiffs to cease publication of one or more deserving textbooks.  This would have an adverse impact on the creation of new textbooks, on scholarly endeavor, and on scientific progress, by making it more difficult to publish deserving textbooks.

## B.     Plaintiffs' Respective Copyright Registrations

29.     Plaintiffs are the copyright owners of, and/or the owners of the exclusive rights under copyright in, *inter alia*, those works or derivative works described on Exhibit A (hereinafter, the "Authentic Works"). Plaintiffs or their affiliates have obtained copyright registrations, duly issued by the United States Copyright Office, covering their respective Authentic Works.

## C.     Plaintiffs' Respective Trademark Registrations

30.     Plaintiffs' Authentic Works bear trademarks as set forth on Exhibit B (hereinafter, the "Marks"), which Plaintiffs or their affiliates have duly registered on the Principal Registrar of the United States Patent and Trademark Office.  Plaintiffs own or are the exclusive licensee of their respective Marks.  Plaintiffs' Marks are distinctive and arbitrary and are now incontestable

under Section 15 of the Lanham Act, 15 U.S.C. § 1065.  Plaintiffs and/or their predecessors invested decades of effort in building a reputation of quality in the publishing industry, which consumers associate with Plaintiffs' Marks.

       **D.**    **The Amazon Marketplace**

     31.    Amazon is a global e-commerce company and is the world's largest e-commerce retailer.  Amazon sources, offers for sale, and sells a wide range of products from manufacturers, wholesalers, and brand owners directly to consumers on its website, Amazon.com.  In this respect, Amazon sells textbooks that it purchases directly from Plaintiffs.  In addition to providing a platform for Amazon's own sales, Amazon is a marketplace for third-party sellers worldwide to advertise, offer for sale, and sell their products or goods directly to consumers.  Each day, millions of consumers use Amazon's marketplace to purchase a wide range of products, including textbooks, from Amazon and third-party sellers.

     32.    A key feature of the Amazon marketplace is that multiple sellers can offer the same product.  Each product sold on Amazon is listed on or in connection with a product detail page, which includes a product image, prices, description, customer reviews, ordering options, and links to view offers from all sellers of the product.

     33.    Amazon provides third-party sellers on its platform the option of using its Fulfillment by Amazon ("FBA") service, which allows sellers to outsource warehouse, shipping, and customer service operations to Amazon in exchange for an additional fee.  FBA sellers ship their products to one of Amazon's fulfillment centers across the country and Amazon stores, packs, ships, and handles customer service and returns for the FBA seller's goods.  A buyer never interacts with an FBA seller directly unless they have an inquiry and choose to communicate with the seller (anonymously) through Amazon's platform.

     34.    The FBA program also offers sellers Multi-Channel Fulfillment ("MCF"), in which

Amazon fulfills a seller's orders received through other sales channels (e.g., other platforms such as eBay or the seller's own website) using the seller's inventory stored in Amazon fulfillment centers.

35.    Product detail pages for textbooks on Amazon are tied to the respective textbook's ISBN.  Accordingly, on Amazon there is a single product page[1] for each of Plaintiffs' textbooks that lists multiple sellers, including those who may be selling counterfeits.  To unsuspecting individual consumers, the offers all appear to be for legitimate copies of textbooks because they are listed under the same product page as the authentic version.  The consumer is left to select the book they want to purchase, which all too often is based solely or largely on the price offered.

### E.    The Growing Counterfeiting Problem

36.    Textbook counterfeiting is rampant, particularly as a result of the ease by which counterfeiters across the world can sell counterfeit textbooks to U.S. consumers via the many well-known online marketplace platforms.

37.    Counterfeit textbooks are often printed overseas and imported into the lucrative U.S. market.  The counterfeit books are of varying levels of quality; while some appear to be high quality, many others are not.  Some do not even contain all or the same content as the legitimate textbook.

38.    While some consumers never know they have purchased a counterfeit textbook, others learn the book is counterfeit after the book's binding starts falling apart, pages begin falling out, or after realizing that the book is missing pages or even whole chapters.  Some such customers

---

[1] While Amazon instructs its sellers to list textbooks under the existing product page identified by the textbook's unique ISBN, some sellers violate that policy by creating a different product page for a particular textbook linked to a unique ASIN (Amazon Standard Identification Number)—the number Amazon uses to identify each non-book, unique product sold on the marketplace—instead of the ISBN.

have complained of receiving a counterfeit in reviews on a textbook's product page on Amazon. But, other consumers apparently do not realize that the poor-quality book they received is the work of counterfeiters. Instead, they blame the respective publisher by posting a complaint about shoddy quality on the book's product page. By nature of Amazon's product pages, these reviews are associated with the legitimate textbook and not the particular seller of the book.

39.     Through expedited discovery, Plaintiffs have learned that some Defendants have also provided Amazon with fictitious names and/or addresses in order to conceal their identities. Defendant Michael Pao (a/k/a Matthew Watson) registered his Storefront by providing a New York address that does not actually exist. Defendant Imran Awan registered his Storefront to an address in Chicago, Illinois. Through expedited discovery, Plaintiffs learned that Defendant Imran Awan actually appears to reside in Pakistan. Similarly, Defendant Roschelle T. Salmon registered her Storefront in New Jersey under the name Matthew Logan. It was only through expedited discovery that Plaintiffs learned that both the name and address she used to register her Storefront are fictitious. Like Salmon, Defendant Rong Li provided Amazon with a fictitious name ("Clarence Wood") and address in Cherry Hill, New Jersey. Through expedited discovery Plaintiffs learned Rong Li's true name and apparent location in China.

40.     In addition to operating under fictitious names, counterfeiters use a variety of other tactics to evade discovery and continue their lucrative, illicit business. For example, once a counterfeiter receives notice of a lawsuit, he or she will often create new online marketplace accounts on Amazon or other sites using new aliases and/or email addresses. Further, counterfeiters often use multiple credit card merchant accounts or other payment processing accounts (such as with PayPal or Payoneer) so that they can nimbly switch between accounts to evade detection and secure their illicit proceeds. It is common for counterfeit sellers to maintain

off-shore bank accounts outside the jurisdiction of the Court, into which they regularly move the proceeds of their illegal sales.

41.     Another way for counterfeiters to operate under the radar is to sell counterfeit textbooks as used —often described as in "very good" or "like new" condition—despite the books being brand new, albeit unauthorized, copies.  Listing new counterfeit textbooks in "used" condition ostensibly justifies Defendants' offer of a new current-edition textbook at a significant savings.  The purportedly "used" condition also can explain why a fake textbook does not include access cards, which the publishers often include with and as a supplement to the legitimate textbook.

42.     In order to combat the damage caused by counterfeits, Plaintiffs have created a worldwide anti-counterfeiting program, through which they go to great lengths to investigate suspicious websites and online marketplace listings.  Plaintiffs also regularly receive counterfeit books turned over to them by legitimate distributors who were sold counterfeit textbooks.

### F.     Defendants' Unlawful Activities

43.     Through their enforcement efforts, Plaintiffs learned that Defendants sell unauthorized and illegal counterfeit textbooks, including Plaintiffs' Authentic Works, on Amazon, as well as other online marketplaces.  Through their Storefronts, Defendants target and ship their infringing textbooks to customers located in the United States, including New York.

44.     When Defendants receive orders through their Storefronts, Amazon processes the ensuing payments, as it does for all third-party sellers' orders.  Amazon then distributes the sales proceeds to Defendants on a regular, automated schedule to financial institution accounts registered to Defendants' respective Amazon seller accounts.

45.     Plaintiffs have made purchases from Defendants' Storefronts, which confirm that Defendants distribute counterfeit copies of Plaintiffs' Authentic Works bearing Plaintiffs' Marks

(hereinafter, collectively, "Counterfeit Books," and each a "Counterfeit Book").

46.     While Plaintiffs have identified some of the counterfeit books that Defendants have distributed, Plaintiffs have not identified all of them.  Indeed, Plaintiffs did not identify all of the online storefronts from which they recently received counterfeit textbooks.  Rather, Plaintiffs limited this suit to the Storefronts from which Plaintiffs received counterfeit copies of at least three different textbook titles.  The list of 44 Counterfeit Books on Exhibit A does not describe all the textbook titles that Defendants are infringing.  The titles identified on Exhibit A represent the Counterfeit Books Plaintiffs purchased from Defendants, and are just examples of the counterfeit textbooks that Defendants are believed to have introduced into the market.  Moreover, the number of textbook titles is not the same as the number of counterfeit copies Plaintiffs received from Defendants' Storefronts.  Plaintiffs purchased and received from many of Defendants' Storefronts multiple counterfeit copies of a single textbook title.

47.     Many of the Counterfeit Books Plaintiffs received from Defendants were listed as used, but in "very good" or "like new" condition, despite being in brand-new condition (sometimes still in shrink wrap).

48.     Most of the Defendants operate their Storefronts as "FBA sellers," i.e., Defendants ship their textbooks to one of Amazon's fulfillment centers for storage, and Amazon fulfills Defendants' orders on their behalf.   Some Defendants, like Defendant Salmon operating TheLogans Storefront, fulfill at least some of their own orders by shipping or arranging to have a third-party ship books directly to customers.

49.     Defendants may likely operate other online storefronts on Amazon that Plaintiffs are not aware of yet.  Defendants may also operate on other online marketplaces or websites.

50.     Defendants may also be drop-shipping counterfeit textbooks for third-parties.

Drop-shipping is a retail fulfillment method used when a store or merchant does not have in its inventory a product that it sells or has sold. Instead, the merchant purchases the item from a third party and has it shipped directly to the customer. For example, Plaintiffs made a purchase from "Best Book Discounts" on Abebooks.com and received a counterfeit textbook that identified the Clarence Wood Storefront. Similarly, Plaintiffs made a purchase from "warehouse-dealz" on Amazon and received a counterfeit textbook that identified Yaroslav Iakovin's Storefront, United TwinStar, as the shipper. Best Book Discounts and warehouse-dealz do not appear to be operated by Rong Li and Yaroslav Iakovin, respectively, as other textbooks Plaintiffs received from these storefronts appear to have been sent by unrelated drop-shippers. However, Plaintiffs cannot be sure without conducting merits discovery from Defendants and relevant third-parties.

51.     Upon information and belief, Defendants intentionally purchase counterfeit copies of Plaintiffs' Authentic Works at a materially cheaper price than they would be required to pay had they purchased Plaintiffs' Authentic Works directly from the respective publishers or from legitimate third-party sellers, pursuant to the custom and practice of the bookselling industry. In doing so, Defendants deliberately evaded legitimate sources, instead sourcing illegal and counterfeit copies of Plaintiffs' Authentic Works, in violation of Plaintiffs' intellectual property rights. Defendants then distribute the Counterfeit Books directly to individual consumers or other resellers, or provided the Counterfeit Books to Amazon for distribution to customers of Defendants' Storefronts.

52.     The Counterfeit Books Defendants distributed are different from and/or inferior to Plaintiffs' Authentic Works. For example, the Counterfeit Books' binding, glue, paper, color and printing, among other traits, are different and inferior. Based on the use of Plaintiffs' Marks, actual and prospective purchasers are likely to believe that the Counterfeit Books are authorized and

legitimate copies of Plaintiffs' Authentic Works.  The Counterfeit Books' inferior quality weakens, blurs, and tarnishes Plaintiffs' respective trademarks.  Plaintiffs' business reputations are further injured by having their trademarks and the goodwill associated with them confused or mistakenly associated with a group or series of textbooks of lesser quality, as alleged above.

53.     Some Defendants appear to be working collectively because many of the Counterfeit Books exhibit the same counterfeit traits and inferior qualities, and several of the Storefronts offer similar inventories.

54.     At the time Defendants distributed and sold the Counterfeit Books, Defendants knew or should have known that the Counterfeit Books were infringing, including based on their "too good to be true price" and inferior quality.

55.     Defendants knowingly directed, supervised, and controlled the distribution of the Counterfeit Books, and had a direct financial interest in, and stood to gain a direct financial benefit from, their deliberately infringing activity.

56.     By engaging in the illegal conduct alleged above, in addition to directly organizing and effectuating such infringing activities, Defendants also personally induced, caused, and materially contributed to infringing conduct by others, including resellers to whom Defendants likely sold the Counterfeit Books.  Such resellers would have further distributed the Counterfeit Books.

57.     Accordingly, Defendants did more than supply the means to facilitate the infringement of Plaintiffs' intellectual property rights.  They also substantially participated in, and orchestrated, such infringing activities.

58.     Defendants' intentional and deceitful misconduct has likely resulted in lost profits to Plaintiffs and has damaged the inherent value of Plaintiffs' Authentic Works and Marks,

impaired Plaintiffs' reputations for providing high-quality higher education textbooks, diluted Plaintiffs' brands and the goodwill associated with them, all of which negatively affects Plaintiffs' relationships with distributors, authors, partners, and students.

## FIRST CLAIM FOR RELIEF

### Copyright Infringement Under 17 U.S.C. §§ 101, *et seq.*

59.     Plaintiffs re-allege and incorporate by reference the allegations set forth above in paragraphs 1- 58.

60.     Plaintiffs' Authentic Works constitute original works and copyrightable subject matter pursuant to the Copyright Act, and they are protected by registrations duly issued to Plaintiffs (or their predecessors or affiliates) by the United States Copyright Office.

61.     At all relevant times, Plaintiffs have been and still are the owners, or exclusive licensees, of all rights, title, and interest in and to their respective copyrights in Plaintiffs' Authentic Works, which have never been assigned, licensed, or otherwise transferred to Defendants.

62.     Beginning on an unknown date but at least since early 2017 and continuing to the present, Defendants, with knowledge of Plaintiffs' copyrights in Plaintiffs' Authentic Works, infringed Plaintiffs' copyrights.  Specifically, Defendants infringed Plaintiffs' exclusive rights to distribute their copyrighted works.  They did so by, among other things, selling the Counterfeit Books for profit, without Plaintiffs' permission, license, or consent.

63.     Defendants' unlawful conduct, as set forth above, was deliberate, intentional, knowing, malicious, and willful.

64.     As a result of Defendants' unlawful and deliberate conduct as set forth above, Plaintiffs have been, and will continue to be, damaged.

65.     Defendants' actions described above have caused and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law.  Unless this Court restrains Defendants from continuing their infringement of Plaintiffs' copyrights, these injuries will continue to occur in the future.  Plaintiffs are accordingly entitled to injunctive relief restraining Defendants from further infringement.

## SECOND CLAIM FOR RELIEF

### Secondary Copyright Infringement Under 17 U.S.C. §§ 101, et seq.

66.     Plaintiffs re-allege and incorporate by reference the allegations set forth above in paragraphs 1- 58.

67.     Plaintiffs' Authentic Works constitute original works and copyrightable subject matter pursuant to the Copyright Act, and they are protected by registrations duly issued to Plaintiffs (or their predecessors or affiliates) by the United States Copyright Office.

68.     At all relevant times, Plaintiffs have been and still are the owners, or exclusive licensees, of all rights, title, and interest in and to their respective copyrights in Plaintiffs' Authentic Works, which have never been assigned, licensed, or otherwise transferred to Defendants.

69.     Beginning on an unknown date but at least since early 2017 and continuing to the present, Defendants, with knowledge of Plaintiffs' copyrights in Plaintiffs' Authentic Works, indirectly infringed Plaintiffs' copyrights.  Specifically, Defendants knowingly engaged in, supervised, and/or controlled the distribution of the Counterfeit Books, and had a direct financial interest in, and stood to gain a direct financial benefit from their deliberately infringing activity. By engaging in the illegal conduct alleged above, in addition to directly organizing and effectuating such infringing activities, Defendants personally induced, caused, and materially

contributed to infringing conduct by others, including resellers to whom Defendants sold the Counterfeit Books for further distribution. Accordingly, Defendants are liable for contributory and vicarious copyright infringement.

70.     Defendants' unlawful conduct, as set forth above, was deliberate, intentional, knowing, malicious, and willful.

71.     As a result of Defendants' unlawful and deliberate conduct as set forth above, Plaintiffs have been, and will continue to be, damaged.

72.     Defendants' actions described above have caused and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law. Unless this Court restrains Defendants from continuing their infringement of Plaintiffs' copyrights, these injuries will continue to occur in the future. Plaintiffs are accordingly entitled to injunctive relief restraining Defendants from further infringement.

## THIRD CLAIM FOR RELIEF

### Infringement of Federally Registered Trademarks Under 15 U.S.C. § 1114

73.     Plaintiffs re- allege and incorporate by reference the allegations set forth above in paragraphs 1- 58.

74.     This claim, arising under Section 32 of the Lanham Act, 15 U.S.C. § 1114, is for infringement of trademarks registered to Plaintiffs in the United States Patent and Trademark Office.

75.     Without Plaintiffs' authorization, Defendants are marketing, offering for sale, and selling in commerce counterfeit textbooks under Plaintiffs' Marks.

76.     Defendants' aforesaid uses of Plaintiffs' Marks have caused and are likely to continue to cause confusion, mistake, and/or deception as to the source or origin of Defendants'

goods, in that the public, and others, are likely to believe that Defendants' goods are provided by, sponsored by, approved by, licensed by, affiliated with, or in some other way legitimately connected with Plaintiffs, all to Plaintiffs' irreparable harm.

77. Defendants, by their above-enumerated acts, willfully and knowingly have violated and infringed Plaintiffs' rights in and to the federally registered Marks, in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114), and Defendants threaten to further violate and infringe Plaintiffs' said rights.

78. Defendants' actions described above have caused and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law.  Unless this Court restrains Defendants from continuing their infringement of Plaintiffs' Marks, these injuries will continue to occur in the future.  Plaintiffs are accordingly entitled to injunctive relief restraining Defendants from further infringement.

79. Defendants' aforesaid conduct was intentional, or deliberately reckless, and without foundation in law.

## FOURTH CLAIM FOR RELIEF

### Trademark Counterfeiting Under 15 U.S.C. § 1114(1)(a)

80. Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs 1- 58.

81. Defendants are infringing the federally registered Plaintiffs' Marks through their use in commerce of a counterfeit, copy, or colorable imitation of Plaintiffs' Marks, in connection with the sale, offering for sale, marketing, distributing, or advertising of textbooks, with such use being likely to cause confusion, to cause mistake, or to deceive the public.

82. Defendants are intentionally using Plaintiffs' Marks on unauthorized products.

Defendants are intentionally infringing upon Plaintiffs' trademark rights in order to further their own business enterprises.

83.    Defendants' counterfeiting of Plaintiffs' Marks, as described above, has caused and will continue to cause irreparable injury to Plaintiffs' reputation and goodwill, for which Plaintiffs have no adequate remedy at law.  Unless this Court restrains Defendants from continuing their counterfeiting activities, these injuries will continue to occur in the future.   Plaintiffs are accordingly entitled to injunctive relief restraining Defendants from further counterfeiting.

## PRAYER FOR RELIEF

By reason of the acts and circumstances alleged above, Plaintiffs seek relief from this Court as follows:

1.    Judgment on each of the claims set forth above, including that Defendants' infringement of Plaintiffs' Authentic Works and Marks was intentional and willful.

2.    Damages and/or restitution according to proof at trial, including exemplary damages where authorized by statute;

3.    An accounting and disgorgement of Defendants' profits, gains, and advantages realized from their unlawful conduct, including a reconciliation of purchases and sales of the Counterfeit Books with documents relating to all such purchases and sales;

4.    An order requiring Defendants to pay Plaintiffs such damages as Plaintiffs have sustained as a consequence of Defendants' unlawful acts as alleged above, including actual damages or statutory damages, at Plaintiffs' election, pursuant to 17 U.S.C. § 504;

5.    An order enjoining Defendants and those acting in concert with them from further infringing upon Plaintiffs' respective copyrights pursuant to 17 U.S.C. § 502;

6.      An order enjoining Defendants and those acting in concert with them from further infringing upon Plaintiffs' respective trademarks pursuant to 15 U.S.C. § 1116;

7.      An order requiring Defendants to pay Plaintiffs such damages as Plaintiffs have sustained as a consequence of Defendants' unlawful use of their trademarks, as alleged above, including statutory damages or treble damages, pursuant to 15 U.S.C. § 1117;

8.      An order requiring Defendants to deliver up for destruction all products, packaging, labels, literature, advertising, and other material bearing imitations, including confusingly similar variations, of Plaintiffs' respective copyrights and marks pursuant to 17 U.S.C. § 503 and 15 U.S.C. § 1118;

9.      Prejudgment and post-judgment interest at the applicable rate;

10.     Plaintiffs' attorney's fees, expenses, and costs of suit; and

11.     Such other and further relief the Court deems proper.

## JURY TRIAL DEMAND

Plaintiffs hereby request a trial by jury.

DATED:  May 2, 2018                    Respectfully submitted,

                                       By:   */s/ Kerry M. Mustico*
                                             Matthew J. Oppenheim
                                             Kerry M. Mustico
                                             OPPENHEIM + ZEBRAK, LLP
                                             5225 Wisconsin Avenue NW, Suite 503
                                             Washington, DC 20015
                                             Tel:  (202) 480-2999
                                             Fax:  (866) 766-1678
                                             matt@oandzlaw.com
                                             kerry@oandzlaw.com

                                             *Attorneys for Plaintiffs*