# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

PEARSON EDUCATION, INC.; ELSEVIER,
INC.; MCGRAW-HILL GLOBAL EDUCATION
HOLDINGS, LLC; and CENGAGE LEARNING,
INC.,

          Plaintiffs,

   v.

IMRAN AWAN; AMRO T. AWWAD; RONG LI;
ANITA RAIN RANI; VIJAY KUMAR; AMMAR
ABDULWAHID MAZRUI; MICHAEL PAO
(A/K/A MATTHEW WATSON); NIDIA
ESPINOZA; MANISH KUMAR SINGH (A/K/A
"MAX DEN" and "SHYAM"); ROSCHELLE T.
SALMON; and YAROSLAV IAKOVIN,

          Defendants.

**Case No. 1:18-cv-402-DLC**

# MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AND A PERMANENT INJUNCTION AGAINST DEFENDANTS IMRAN AWAN, AMRO T. AWWAD, RONG LI, ANITA RAIN RANI, VIJAY KUMAR, AMMAR ABDULWAHID MAZRUI, MICHAEL PAO, NIDIA ESPINOZA, MANISH KUMAR SINGH, AND YAROSLAV IAKOVIN

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................ii

INTRODUCTION ..............................................................................................1

BACKGROUND ...............................................................................................2

    I. PLAINTIFFS' BUSINESSES..........................................................................2

    II. DEFENDANTS' UNLAWFUL CONDUCT ......................................................3

        A.  Defendant Imran Awan d/b/a Atmi7654 (Seller ID A1CG7ES2FSMS9W)..........4

        B.  Defendant Amro T. Awwad d/b/a BookExperts
            (Seller ID A2N0FSW82YCEBR).......................................................5

        C.  Defendant Rong Li d/b/a Clarence Wood (Seller ID A1W0N0RRQL82E1) ........6

        D.  Defendants Vijay Kumar and Anita Rani d/b/a HEAVYHOUSE-BOOKS (Seller
            ID A3FMQR7FXRFI0W) ...............................................................7

        E.  Defendant Ammar Abdulwahid Mazrui d/b/a Huge Crit (Seller ID
            A3DDSCP3ACKEWO)....................................................................8

        F.  Defendant Michael Pao d/b/a Matthew's Book Store (Seller ID
            A2DO668BPH25DT) .....................................................................9

        G.  Defendant Nidia Espinoza d/b/a Nidiiz (Seller ID AXULVU20BNHVF) ..........10

        H.  Defendant Manish Kumar Singh d/b/a STAY SMART (Seller ID
            A3GO8CXMLXUW0P).................................................................10

        I.  Defendant Yaroslav Iakovin d/b/a United TwinStar (Seller ID
            A3HUO8588XNGTY) ..................................................................12

    III. DEFENDANTS' DEFAULT ....................................................................13

ARGUMENT ..................................................................................................14

    I. PLAINTIFFS ARE ENTITLED TO DEFAULT JUDGMENT AGAINST
    DEFENDANTS BASED ON THE WELL-PLEADED ALLEGATIONS IN THE
    COMPLAINT...............................................................................................14

        A.  Personal Jurisdiction ...............................................................................15

            1.  Section 302(a)(1) .............................................................................15

            2.  Section 302(a)(3) .............................................................................17

       3.   Due Process ............................................................................ 19

   B.   Liability for Copyright Infringement .................................................. 20

   C.   Liability for Trademark Infringement ................................................. 21

II. PLAINTIFFS ARE ENTITLED TO MAXIMUM STATUTORY DAMAGES FOR
DEFENDANTS' WILLFUL INFRINGEMENT .............................................................. 22

   A.   Statutory Damages Under the Copyright Act ....................................... 24

   B.   Statutory Damages Under the Lanham Act .......................................... 25

   C.   Plaintiffs' Request for Statutory Damages Is Appropriate ..................... 26

   D.   An Evidentiary Hearing to Determine Statutory Damages Is Not Required or
Necessary ................................................................................................... 31

III. DEFENDANTS SHOULD BE PERMANENTLY ENJOINED ............................... 32

CONCLUSION ............................................................................................................... 33

# TABLE OF AUTHORITIES

<u>Cases</u>

*Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty.,* 480 U.S. 102 (1987) ................20

*Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61 (2d Cir. 1981)....................................................14

*Blue Ribbon Pet Prods. v. Rolf C. Hagen (USA) Corp.*,
66 F. Supp. 2d 454 (E.D.N.Y. 1999) ...........................................................................................21

*Bravado Int'l Group Merch. Servs. v. Ninna, Inc.*, 655 F. Supp. 2d 177 (E.D.N.Y. 2009) ....22-23

*Broad. Music, Inc. v. PAMDH Enters.*, No. 13-Civ-2255 (KMW),
2014 WL 2781846, 2014 U.S. Dist. LEXIS 84409 (S.D.N.Y. June 19, 2014) ......................30-31

*Burberry Ltd. v. EuroModa, Inc.*, No. 08 Civ. 5781 (CM)(AJP),
2009 WL 4432678, 2009 U.S. Dist. LEXIS 113407 (S.D.N.Y. Dec. 4, 2009) ...........................30

*Capitol Records, LLC v. VideoEgg, Inc.,* 611 F. Supp. 2d 349 (S.D.N.Y. 2009) .......................18

*Cengage Learning, Inc., et al. v. Doe 1 d/b/a bargainsofmaine, et al.,*
Case No. 1:18-cv-403-RJS, Def. J. and Perm. Inj. (S.D.N.Y. May 11, 2018) .................24-25, 31

*Chew v. Dietrich*, 143 F.3d 24 (2d Cir. 1998)...............................................................................19

*Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010) .........................16, 19, 20

*Church & Dwight Co. v. Kaloti Enters. of Mich., L.L.C.,*
697 F. Supp. 2d 287 (E.D.N.Y. 2009) .........................................................................................31

*Citigroup Global Mkts, Inc. v. JWS 1999 Holding B.V.*, No. 08 Civ. 5362 (RJS),
2009 WL 2981912, 2009 U.S. Dist. LEXIS 83776 (S.D.N.Y. Sept. 11, 2009) ...........................14

*Coach Inc. v. Allen*, No. 11-Civ-3590 (CM), 2012 WL 2952890,
2012 U.S. Dist. LEXIS 100829 (S.D.N.Y. July 19, 2012).................................................25, 26, 30

*Coach, Inc. v. Chaos of Muncie*, No. 11-CV-0505-JMS-DML, 2012 WL 896420,
2012 U.S. Dist. LEXIS 35062 (S.D. Ind. Mar. 15, 2012) ............................................................21

*Cullman Ventures, Inc. v. Columbian Art Works, Inc.*,
717 F. Supp. 96 (S.D.N.Y. 1989) .................................................................................................21

*Elsevier, Inc. v. Kozlov*, et al., No. 14-Civ-2422 (GHW),
Def. J. Perm. Inj. (S.D.N.Y. Apr. 13, 2015) .................................................................................25

# TABLE OF AUTHORITIES
## (Continued)

Cases

*EnviroCare Techs., LLC v. Simanovsky*, No. 11-CV-3458(JS)(ETB), 2012 WL 2001443,
2012 U.S. Dist. LEXIS 78088 (E.D.N.Y. June 4, 2012) .........................................................16, 17

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) ...................................................20

*Fitzgerald Publ'g Co. v. Baylor Publ'g Co.,* 807 F.2d 1110 (2d Cir. 1986) .........................24, 29

*FTC v. 1263523 Ontario, Inc.*, 205 F. Supp. 2d 218 (S.D.N.Y. 2002) .........................................14

*Grand v. Schwarz,* No. 15-CV-8779, 2016 WL 2733133,
2016 U.S. Dist. LEXIS 61606 (S.D.N.Y. May 10, 2016) ...........................................................18

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284 (S.D.N.Y. 2003) ...................22

*Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117 (S.D.N.Y. 2008) ...................................14

*Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC*, 2016 WL 7451306,
2016 U.S. Dist. LEXIS 178796 (S.D.N.Y. Dec. 27, 2016) .........................................................16

*Int'l Diamond Importers, Inc. v. Med Art, Inc.,* No. 15-CV-4045,
2017 WL 2839640, 2017 U.S. Dist. LEXIS 102257 (S.D.N.Y. June 29, 2017) ...................17-18

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ...................................................................19

*JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910 (7th Cir. 2007) ...................................................20

*John Wiley & Sons, Inc. v. Book Dog Books, LLC,* ---F. Supp. 3d ---, Case Nos. 13cv816,
16cv7123, 2018 WL 3956508 (S.D.N.Y. Aug. 17, 2018).......................................................23-24

*Kepner-Tregoe, Inc. v. Vroom,* 186 F.3d 283 (2d Cir. 1999) .......................................................25

*Lewis v. Madej*, No. 15-CV-2676 (CPS), 2015 WL 6442255,
2015 U.S. Dist. LEXIS 144384 (S.D.N.Y. Oct. 23, 2015) ..........................................................18

*Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co.*, No. 15 Civ. 8459,
2016 WL 3748480, 2016 Dist. LEXIS 89149 (S.D.N.Y. July 8, 2016) ......................................16

*Louis Vuitton Malletier v. Carducci Leather Fashions, Inc.*,
648 F. Supp. 2d 501 (S.D.N.Y. 2009) ........................................................................................29

iv

**TABLE OF AUTHORITIES**
**(Continued)**

<u>Cases</u>

*McGraw-Hill Cos., Inc. v. Ingenium Techs. Corp.*,
375 F. Supp. 2d 252 (S.D.N.Y. 2005) ............................................................................ 17, 18

*McGraw-Hill Global Educ. Holdings, et al. v. Peng, et al.*,
Case No. 1:17-cv-6224-RJS, Def. J. and Perm. Inj. (S.D.N.Y. Jan. 5, 2018) ........................ 25, 31

*McGraw-Hill Global Educ., LLC v. Jarrad*,
No. 15-CV-2579-VEC, Def. J. and Perm. Inj. (S.D.N.Y. Jan. 8, 2016) ................................ 25, 31

*North Face Apparel Corp. v. Fujian Sharing Imp. & Exp. Ltd*,
No. 10-Civ-1630 (AKH), Def. J. and Perm. Inj. (S.D.NY. Sept.13, 2010) ................................ 26

*N.A.S. Imp., Corp. v. Chenson Enters., Inc.*, 968 F.2d 250 (2d Cir. 1992) ................................. 29

*Philip Morris USA Inc. v. Felizardo*, No. 03 Civ. 5891 (HB), 2004 WL 1375277,
2004 U.S. Dist. LEXIS 11154 (S.D.N.Y. June 18, 2004) ...................................................... 21-22

*Phillip Morris USA Inc. v. Marlboro Express.*, No. 03-CV-1161 (CPS),
2005 WL 2076921, 2005 U.S. Dist. LEXIS 40359 (E.D.N.Y. Aug. 26, 2005) ......................... 29

*Rogers v. eColor Studio*, No. 11-CV-4493 (ARR) (RER),
2013 WL 752256, 2013 U.S. Dist. LEXIS 28332 (E.D.N.Y. Feb. 7, 2013) ............................... 17

*Rolex Watch U.S.A., Inc. v. Brown,* No. 01 Civ. 9155 (JGK) (AJP),
2002 WL 1226863, 2002 U.S. Dist. LEXIS 10054 (S.D.N.Y. June 5, 2002) ......................... 23, 31

*Sara Lee Corp. v. Bags of New York, Inc.*, 36 F. Supp. 2d 161 (S.D.N.Y. 1999) ......................... 23

*Silhouette Int'l Schmied AG v. Chakhbazian,* No. 04 Civ. 3613 (RJH) (AJP),
2004 WL 2211660, 2004 U.S. Dist. LEXIS 19787 (S.D.N.Y. Oct. 4, 2004) .............................. 23

*Sony BMG Music Entm't v. Tenenbaum,* 719 F.3d 67 (1st Cir. 2013) .......................................... 23

*Starbucks Corp. v. Morgan*, No. 99 Civ. 1404 (LLS)(AJP),
2000 WL 949665, 2000 U.S. Dist. LEXIS 14677 (S.D.N.Y. July 11, 2000) ............................... 14

*Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*,
74 F.3d 488 (4th Cir. 1996) ..................................................................................................... 25

*Tamarin v. Adams Caterers, Inc.*, 3 F.3d 51 (2d Cir. 1993) ...................................................... 31

# TABLE OF AUTHORITIES
## (Continued)

Cases

*Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010) ........................................................21

*Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123 (S.D.N.Y. 2003)................................................29

*TigerCandy Arts, Inc. v. Blairson Corp.,* No. 09 Civ. 6215 (GBD) (FM),
2012 WL 760168, 2012 U.S. Dist. LEXIS 35269 (S.D.N.Y. Feb. 23, 2012) ...............................32

*True Religion Apparel, Inc. v. Xiaokang Lei*, et al.,
No. 11-Civ-8242 (HB), Def. J. and Perm. Inj. (S.D.N.Y. Mar. 12, 2012) ...................................25

*Union of Orthodox Jewish Congregation of Am. v. Royal Food Distribs. LLC,*
665 F. Supp. 2d 434 (S.D.N.Y. 2009) ...................................................................................14, 24

*Yahoo! Inc. v. XYZ Cos.*, 872 F. Supp. 2d 300 (S.D.N.Y. 2011)...................................................24

Statutes

15 U.S.C. § 1065 ......................................................................................................................3, 22

15 U.S.C. § 1114 ...........................................................................................................................21

15 U.S.C. § 1115 ...........................................................................................................................21

15 U.S.C. § 1116 ...........................................................................................................................32

15 U.S.C. § 1117 ...........................................................................................................................25

17 U.S.C. § 106 .......................................................................................................................20, 21

17 U.S.C. § 410 .............................................................................................................................20

17 U.S.C. § 502 .............................................................................................................................32

17 U.S.C. § 504 .......................................................................................................................24, 29

28 U.S.C. § 1338 ...........................................................................................................................15

**TABLE OF AUTHORITIES**
**(Continued)**

<u>Rules</u>

Fed. R. Civ. P. 55 ................................................................................................................ 14

N.Y. C.P.L.R §302 ........................................................................................................15-19

Local Rule 55.1 ................................................................................................................ 13

Pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, Plaintiffs Elsevier, Inc., Pearson Education, Inc., Cengage Learning, Inc., and McGraw-Hill Global Education Holdings, LLC (hereinafter, "Plaintiffs") respectfully submit this Memorandum of Law in Support of Default Judgment and a Permanent Injunction against Defendants Imran Awan, Amro T. Awwad, Rong Li, Anita Rain Rani, Vijay Kumar, Ammar Abdulwahid Mazrui, Michael Pao, Nidia Espinoza, Manish Kumar Singh, and Yaroslav Iakovin (hereinafter, "Defendants"), and state as follows:

## **INTRODUCTION**

Defendants are booksellers who engage in the illegal distribution and sale of counterfeit copies of Plaintiffs' textbooks through Amazon.com ("Amazon"), among other marketplaces. Hiding behind the anonymity of their online storefronts and often using false names to register those accounts, Defendants advertise, sell, and distribute to the public counterfeit copies of Plaintiffs' copyrighted textbooks, bearing unauthorized reproductions of Plaintiffs' trademarks. Defendants have sold an innumerable number of infringing and counterfeit copies of Plaintiffs' textbooks in the United States, and in this District, via the Internet.

Despite having been properly served with the summons and complaint, and having received the Court's Temporary Restraining Order and Preliminary Injunction, as well as numerous emails sent by Plaintiffs' counsel about the lawsuit, Defendants have chosen to ignore this suit and the Court's authority. *See* Decl. of Matthew Fleischman ("Fleischman Decl.") submitted herewith, ¶ 5. Indeed, several of the Defendants continued to advertise and sell counterfeit copies of Plaintiffs' textbooks even after this Court issued injunctions restraining Defendants. Their conduct has been nothing short of outrageous and contemptuous.

In light of Defendants' default, Plaintiffs now seek entry of a default judgment and permanent injunction against them. Specifically, Plaintiffs seek: 1) a declaration that Defendants

are liable for willful copyright and trademark infringement; 2) statutory damages for Defendants' willful infringement of Plaintiffs' copyrights; 3) statutory damages for Defendants' willful infringement of Plaintiffs' trademarks; and 4) a permanent injunction to enjoin further infringement of Plaintiffs' copyrights and trademarks.  The specific amount of damages sought for each Defendant is set forth herein.

## **BACKGROUND**

### I.      **PLAINTIFFS' BUSINESSES**

Plaintiffs are among the world's leading educational publishers.  Am. Compl., ECF No. 55 ¶ 2.  They provide a comprehensive range of traditional and digital educational content and tools to professionals and students of all ages.  *Id.*  Plaintiffs' publications, which include physical and digital textbooks, as well as online publications (collectively, "Textbooks"), are widely available in the marketplace for sale, rent, or by subscription, including from physical and online bookstores. *Id.* ¶ 24.

Plaintiffs are the copyright owners of, and/or the owners of the exclusive rights in, the works described on Exhibit A to the Complaint (hereinafter, the "Authentic Works").  Plaintiffs, or their affiliates, have each duly registered their respective copyrights in the Authentic Works. *Id.* ¶ 29; Decl. of Jessica Stitt, ECF No. 10 ("Stitt Decl.") ¶ 5; Decl. of Steven Rosenthal, ECF No. 11 ("Rosenthal Decl.") ¶ 5; Decl. of Diane Peirano, ECF No. 9 ("Peirano Decl.") ¶ 5; Decl. of Kelly McCann, ECF No. 8 ("McCann Decl." and, collectively, with Stitt Decl., Rosenthal Decl., and Peirano Decl., "Publishers' Decl.") ¶ 5.

The Authentic Works bear the trademarks and service marks set forth in Exhibit B to the Complaint (hereinafter, the "Marks" or "Plaintiffs' Marks"), which Plaintiffs, or their affiliates, have duly registered on the Principal Register of the United States Patent and Trademark Office.

Am. Compl. ¶ 30; Publishers' Decl. ¶ 6.   Plaintiffs own or are the exclusive licensee of their respective Marks.   Am. Compl. ¶ 30; Publishers' Decl. ¶ 6.   Plaintiffs' Marks are distinctive and arbitrary and in some cases are now incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.   Am. Compl. ¶ 30.

Plaintiffs invest significant resources to publish their Textbooks.   Am. Compl. ¶ 26.   Each year they incur substantial costs for author royalties and other costs of content creation or licensing, copyediting, printing, binding, and distribution.   *See id.*; Publishers' Decl. ¶ 13.   Plaintiffs also make substantial investments in advertising and promoting their Textbooks under their U.S.-registered trade and service marks, as well as in their goodwill and reputations for high-quality educational content.   *See* Am. Compl. ¶ 27.   Plaintiffs suffer serious injury as a result of the sale of counterfeit Textbooks, and would suffer still more injury if their rights were not enforced.   *See id.* ¶ 28; Publishers' Decl. ¶¶ 4, 12-13.   Indeed, counterfeiting diminishes the perceived value of Plaintiffs' respective copyrights and trademarks.   Am. Compl. ¶ 4; Publishers' Decl. ¶ 12.   The ensuing decline in revenue from sales or rentals of their copyrighted works could cause Plaintiffs to cease publishing one or more deserving Textbooks.   Am. Compl. ¶ 28; Publishers' Decl. ¶ 13. This would adversely impact the creation of new textbooks, as well as the availability and quality of educational content in many disciplines, including the humanities, sciences, and social sciences. *Id.*

## II.   DEFENDANTS' UNLAWFUL CONDUCT

Defendants have willfully infringed Plaintiffs' copyrights and trademarks by offering for sale, advertising, selling, and distributing counterfeit copies of Plaintiffs' copyrighted Textbooks, including, but not limited to, the Authentic Works which bear Plaintiffs' Marks.   Am. Compl. ¶¶ 43-58; Publishers' Decl. ¶ 9.   Defendants do so through online marketplaces, including Amazon.

Am. Compl. ¶ 43; Publishers' Decl. ¶ 10.  All of Defendants' Online Storefronts have used Plaintiffs' Marks to advertise, promote, and sell their counterfeit copies of Plaintiffs' Textbooks. *See* Decl. of Dan Seymour, ECF No. 13 ("Seymour Decl.") ¶ 10.  Through test purchases, Plaintiffs identified multiple online seller accounts on Amazon.com (the "Online Storefronts") that sell counterfeit copies of Plaintiffs' textbooks.  Am. Compl. ¶ 45; Fleischman Decl. ¶ 7.  Plaintiffs purchased 67 counterfeit copies (42 different titles) of their Authentic Works (the "Counterfeit Books") from Defendants' Online Storefronts.  Am. Compl. Ex. A; Fleischman Decl. ¶ 7.

Plaintiffs conducted expedited discovery as provided in the *Ex Parte* Order, Jan. 17, 2018, ECF No. 3, and served subpoenas on Amazon.com, Inc. and financial institutions to determine the identities of the individuals or entities behind the Online Storefronts.  As discussed further below, these individuals were named in the Amended Complaint as Defendants doing business through their respective Online Storefronts.

## A. <u>Defendant Imran Awan d/b/a Atmi7654 (Seller ID A1CG7ES2FSMS9W)</u>

Prior to filing suit, Plaintiffs purchased counterfeit copies of three different Textbooks from Defendant Awan's Online Storefront, atmi7654.  Am. Compl. ¶ 13; Seymour Decl., Ex. 4; Fleischman Decl. ¶ 8.  Awan registered his Online Storefront with Amazon using false addresses in Pocatello, Idaho and Chicago, Illinois.  *Id.*  In fact, Awan lives in Pakistan, which Plaintiffs only learned from Defendants' bank records obtained with a subpoena.  *Id.*

Notwithstanding having been provided with the Temporary Restraining Order (ECF No. 3) and Preliminary Injunction (ECF No. 34) (collectively, the "Injunctions"), Awan violated the Injunctions issued by this Court in this case by destroying his inventory of Plaintiffs' Textbooks before Plaintiffs were permitted to inspect them, as provided for in the Injunctions.  *Id.* ¶ 9. Specifically, Awan instructed Amazon to destroy the remaining copies of Plaintiffs' Textbooks in his inventory at Amazon's fulfillment center, which were subject to the Injunctions.  *Id.*  This

instruction was given after Awan was served with the Injunctions, *id.*, and was a knowing and deliberate act of spoliation.  As a result of Awan's violation of the Injunctions, Plaintiffs were not able to inspect Awan's inventory of Plaintiffs' Textbooks held by Amazon as the Court permitted in the *Ex Parte* Order.  Furthermore, Awan's failure to cooperate in this litigation and ultimate default prevented Plaintiffs from inspecting any other copies of Plaintiffs' Textbooks in his possession, custody, or control, and prevent any counterfeits found therein from entering the marketplace.  Thus, Awan thwarted Plaintiffs' ability to recover equitable relief to which they would have been entitled and destroyed critical evidence that very likely would have shown additional infringement of Plaintiffs' copyrights and trademarks.

### B.    Defendant Amro T. Awwad d/b/a BookExperts (Seller ID A2N0FSW82YCEBR)

Prior to filing the Complaint, Plaintiffs purchased counterfeit copies of six different Textbooks from Defendant Awwad's Online Storefront, BookExperts.  Am. Compl. ¶ 14; Seymour Decl., Ex. 4; Fleischman Decl. ¶ 10.  Defendant Awwad and his brother, Ammar Awwad, sell counterfeit copies of Plaintiffs' Textbooks through multiple online marketplaces.  *Id.*  Defendant Awwad and his brother live close to each other and have moved from state to state together.  *Id.* Over the past two years, Plaintiffs have sent multiple infringement notices to the Awwads via the online marketplaces on which they operate.  *Id.*  Thus, Defendant and his brother have continued to infringe Plaintiffs' copyrights and trademarks despite having notice that their sales of Plaintiffs' Textbooks were infringing since at least January 13, 2016.  *Id.*  While Defendant Awwad initially communicated with Plaintiffs' counsel regarding this lawsuit, he refused to answer questions about his connection to his brother's counterfeit sales and told Plaintiffs' counsel that he would rather have default judgment entered against him.  *Id.*

Like Awan, Defendant Awwad also violated the Court's Injunctions and spoliated evidence

after being served with the Injunctions.  Specifically, Awwad instructed Amazon to ship copies of Plaintiffs' Textbooks in his inventory at Amazon's fulfillment center back to him.  *Id.* ¶ 11. Awwad's willful violation of the Court's Injunctions has prevented Plaintiffs from recovering equitable relief to which they would have been entitled and destroyed critical evidence that very likely would have shown additional infringement of Plaintiffs' copyrights and trademarks.  Still worse, because Awwad instructed Amazon to ship the Textbooks back to him, as opposed to having them destroyed, Awwad has ensured his ability to continue infringing Plaintiffs' copyrights and trademarks.  Awwad's conduct was blatantly in violation of the Court's Injunctions and constituted willful spoliation of evidence.

Despite Awwad's violation of the Injunctions, Plaintiffs succeeded in inspecting what remained of his inventory of Plaintiffs' Textbooks in Amazon's fulfillment center.  *Id.* ¶ 12. Plaintiffs received 100 Textbooks from Awwad's Amazon inventory.  *Id.*  Plaintiffs concluded that, at least, 73 out of the 100 Textbooks inspected are counterfeit.  *Id.*  This number would undoubtedly have been higher if Awwad had not violated the Injunctions and hid evidence of his illegal conduct.

### C.    Defendant Rong Li d/b/a Clarence Wood (Seller ID A1W0N0RRQL82E1)

Prior to filing the Complaint, Plaintiffs purchased ten counterfeit copies their Textbooks (six different titles) from Defendant Li's Online Storefront, Clarence Wood.  Am. Compl. ¶ 15; Seymour Decl., Ex. 4; Fleischman Decl. ¶ 13.  Defendant Li took numerous steps to hide her identity, so it would be difficult to identify who was operating the storefront.  When creating the storefront, Li provided Amazon with a fictitious name ("Clarence Wood") and a fake address in Cherry Hill, New Jersey.  Am. Compl. ¶ 39.  Rather than link her Online Storefront to her own credit card, Li purchased a virtual credit card in a fake name to further hide her identity. Fleischman Decl. ¶ 13.  It was only because Plaintiffs obtained records associated with the bank

account linked to and receiving proceeds from Li's Online Storefront that Plaintiffs were finally able to uncover Li's true name and apparent location in China.  Am. Compl. ¶ 39; Fleischman Decl. ¶ 13.

Plaintiffs inspected what remained of her inventory of Plaintiffs' Textbooks in Amazon's fulfillment center.  *Id.* ¶ 14.  Plaintiffs received 208 Textbooks from Li's Amazon inventory.  *Id.* Plaintiffs determined that, at least, 206 out of the 208 (99%) Textbooks inspected are counterfeit. *Id.*

Li's failure to cooperate in this litigation and ultimate default prevented Plaintiffs from inspecting any other copies of Plaintiffs' Textbooks in her possession, custody, or control, and prevent any counterfeits found therein from entering the marketplace.  Thus, Li blocked Plaintiffs' ability to recover equitable relief to which they would have been entitled and destroyed critical evidence that very likely would have shown additional infringement of Plaintiffs' copyrights and trademarks.

### D.     Defendants Vijay Kumar and Anita Rani d/b/a HEAVYHOUSE-BOOKS (Seller ID A3FMQR7FXRFI0W)

Prior to filing the Complaint, Plaintiffs six counterfeit copies of their Textbooks (four different titles) from Defendants Kumar and Rani's Online Storefront, HEAVYHOUSE-BOOKS. Am. Compl. ¶¶ 16-17; Seymour Decl., Ex. 4; Fleischman Decl. ¶ 15.  After the Injunctions were issued, Plaintiffs inspected what remained of her inventory of Plaintiffs' Textbooks in Amazon's fulfillment center.  *Id.*  Plaintiffs received 91 Textbooks from Kumar and Rani's Amazon inventory.  *Id.*  Plaintiffs determined that, at least, 85 out of the 91 Textbooks inspected (93%) are counterfeit.  *Id.*  Furthermore, Kumar and Rani's failure to cooperate in this litigation and ultimate default prevented Plaintiffs from inspecting any copies of Plaintiffs' Textbooks in their possession, custody, or control, and remove any counterfeits found therein from the marketplace.  Thus, Kumar

and Rani blocked Plaintiffs' ability to recover equitable relief to which they would have been entitled and destroyed critical evidence that very likely would have shown additional infringement of Plaintiffs' copyrights and trademarks.

### E.     Defendant Ammar Abdulwahid Mazrui d/b/a Huge Crit (Seller ID A3DDSCP3ACKEWO)

Prior to filing the Complaint, Plaintiffs purchased counterfeit copies of twelve different Textbooks from Defendant Mazrui's Online Storefront, Huge Crit.  Am. Compl. ¶ 18; Seymour Decl., Ex. 4; Fleischman Decl. ¶ 16.  Like several other Defendants in this case, Mazrui violated the Injunctions by destroying his inventory of Plaintiffs' Textbooks – after he was served with the Injunctions.  *Id.*  Specifically, Mazrui requested that Amazon ship back to him some of the remaining copies of Plaintiffs' Textbooks in his inventory at Amazon's fulfillment center, which were subject to the Injunctions.  *Id.*  When asked about this destruction, Mazrui, through counsel, did not offer an explanation or justification but instead said that the books were simply sent to the wrong address and are likely already destroyed.  *Id.*  So, not only did Mazrui instruct Amazon to ship the inventory that was ordered to be frozen, but when confronted with his improprieties, he made no effort to cure the improper conduct.  Mazrui's conduct constituted willful spoliation.  As a result of Mazrui's violation of the Injunctions, Plaintiffs were not able to inspect all of Mazrui's inventory of Plaintiffs' Textbooks held by Amazon as the Court permitted in the *Ex Parte* Order.

Despite Mazrui's violation of the Injunctions, Plaintiffs succeeded in inspecting a very small amount of inventory in his possession.  *Id.* ¶ 17.  Plaintiffs received 4 Textbooks from Mazrui's personal inventory.  *Id.*  Plaintiffs determined that, at least, 1 out of the 4 Textbooks inspected is counterfeit.  *Id.*  This number would undoubtedly have been higher if Mazrui had not violated the Injunctions and hid evidence of his illegal conduct.  Furthermore, Mazrui's failure to cooperate in this litigation and ultimate default prevented Plaintiffs from inspecting any other

copies of Plaintiffs' Textbooks in his possession, custody, or control, and remove any counterfeits found therein from the marketplace. Thus, Mazrui blocked Plaintiffs' ability to recover equitable relief to which they would have been entitled and destroyed critical evidence that very likely would have shown additional infringement of Plaintiffs' copyrights and trademarks.

> **F.      Defendant Michael Pao d/b/a Matthew's Book Store (Seller ID A2DO668BPH25DT)**

Defendant Pao may be among the most nefarious counterfeit sellers Plaintiffs have come across in the course of enforcing their rights. Prior to filing the Complaint, Plaintiffs purchased six counterfeit copies of their Textbooks (five different titles) from Defendant Pao's Online Storefront, Matthew's Books Store. Am. Compl. ¶ 19; Seymour Decl., Ex. 4; Fleischman Decl. ¶ 18. Pao registered his Online Storefront with Amazon using a false name—"Matthew Watson"— and a false address in New York. *Id.* Plaintiffs understand that Pao did this because Amazon had shut down Pao's original storefront for selling counterfeit batteries and headphones. *Id.* Accordingly, Pao purchased his Online Storefront from a third party who was selling Amazon accounts. *Id.* In response to a bank subpoena, Plaintiffs determined that Matthew Watson was not the account operator, and that Pao was receiving proceeds from Pao's Online Storefront, which indicate that Pao actually lives in Chino, California. *Id.*

Pao initially ignored this lawsuit, only contacting Plaintiffs' counsel in May 2018 after his bank account was frozen pursuant to the preliminary injunction. *Id.* ¶ 19. Then, through counsel, Pao falsely told Plaintiffs that he did not operate any other online storefronts, that he had no more inventory, and misrepresented his sales of Plaintiffs' Book. *Id.*

As it turns out, Pao's representations to Plaintiffs were totally false. Pao had plenty of remaining inventory, all of which he continued to sell on a storefront on eBay, mikeypao. *Id.* ¶ 20. He did this despite having been served with the Complaint and the Injunctions in this case.

*Id.* Plaintiffs purchased three additional counterfeit copies of their Textbooks from Pao's eBay storefront in July 2018, long after the Injunctions had issued. *Id.* Plaintiffs subpoenaed PayPal, Inc., the payment processor for purchases from mikeypao and confirmed that Defendant Pao operates the storefront. *Id.* Plaintiffs ultimately learned from Pao's counsel that he sold, at least, 49 Textbooks on eBay after the Injunctions were issued. *Id.*

Despite Pao's communications with Plaintiffs regarding this case, Pao nonetheless chose to default, rather than defend it. Pao's failure to cooperate in this litigation, as well as his willful violation of the Court's Injunctions and continued infringement, has prevented Plaintiffs from inspecting his inventory of Plaintiffs' Textbooks, from recovering the equitable relief to which they would have been entitled, and effectively destroyed critical evidence that very likely would have shown additional infringement of Plaintiffs' copyrights and trademarks. Pao's continued infringement in the face of this Court's Injunctions and misrepresentations to counsel demonstrate the highest degree of culpability.

### G.    Defendant Nidia Espinoza d/b/a Nidiiz (Seller ID AXULVU20BNHVF)

Prior to filing the Complaint, Plaintiffs purchased counterfeit copies of seven different Textbooks from Defendant Espinoza's Online Storefront, Nidiiz. Am. Compl. ¶ 20; Seymour Decl., Ex. 4; Fleischman Decl. ¶ 21. Espinoza claimed to have no additional inventory and provided no concrete evidence concerning her sourcing of textbooks. *Id.* By failing to provide any information regarding where Espinoza sourced the counterfeit books, Plaintiffs were not only denied the opportunity to determine the extent of her infringement, but also to shut down the source supplying the counterfeit books to her.

### H.    Defendant Manish Kumar Singh d/b/a STAY SMART (Seller ID A3GO8CXMLXUW0P)

Prior to filing the Complaint, Plaintiffs purchased nine counterfeit copies of their

Textbooks (five different titles) from Defendant Singh's Online Storefront, STAY SMART.  Am. Compl. ¶ 21; Seymour Decl., Ex. 4; Fleischman Decl. ¶ 22.  Singh registered his Online Storefront with Amazon using a false name, "Max Den."  *Id.*  It was only because Plaintiffs obtained records associated with the bank account linked to and receiving proceeds from Singh's Online Storefront that Plaintiffs were able to uncover Singh's true name.  *Id.*

Despite having been served with this Court's Injunctions, Singh destroyed his inventory of Plaintiffs' Textbooks.  *Id.* ¶ 23.  Specifically, like other Defendants in this case, Singh instructed Amazon to ship back to him some of the remaining copies of Plaintiffs' Textbooks in his inventory at Amazon's fulfillment center, which were subject to the Injunctions.  *Id.*  As a result of Singh's violation of the Injunctions, Plaintiffs were not able to inspect all of Singh's inventory of Plaintiffs' Textbooks held by Amazon as the Court permitted in the *Ex Parte* Order.

Notwithstanding, Plaintiffs succeeded in inspecting what remained of his inventory of Plaintiffs' Textbooks in Amazon's fulfillment center.  *Id.* ¶ 24.  Plaintiffs received 116 Textbooks from Singh's Amazon inventory.  *Id.*  Plaintiffs determined that <u>all</u> 116 inspected (100%) are counterfeit.  *Id.*  The number of counterfeits found would undoubtedly have been higher if Singh had not violated the Injunctions and hid evidence of his illegal conduct.  Furthermore, Singh's failure to cooperate in this litigation and ultimate default prevented Plaintiffs from inspecting any other copies of Plaintiffs' Textbooks in his possession, custody, or control, and prevent any counterfeits found therein from entering the marketplace.  Thus, Singh blocked Plaintiffs' ability to recover equitable relief to which they would have been entitled and destroyed critical evidence that very likely would have shown additional infringement of Plaintiffs' copyrights and trademarks.

11

## I.      Defendant Yaroslav Iakovin d/b/a United TwinStar (Seller ID A3HUO8588XNGTY)

Prior to the filing of the Complaint, Plaintiffs purchased eight counterfeit copies of their Textbooks (six different titles) from Iakovin's Online Storefront, United TwinStar.  Am. Compl. ¶ 22; Seymour Decl., Ex. 4; Fleischman Decl. ¶ 25.  Iakovin violated the Injunctions issued by the Court in this case by destroying his inventory of Plaintiffs' Textbooks.  *Id.*  Despite being served with the Injunctions, Iakovin instructed Amazon to destroy the remaining copies of Plaintiffs' Textbooks in his inventory at Amazon's fulfillment center, which were subject to the Injunctions. *Id.*  Despite Iakovin's violation of the Injunctions, Plaintiffs succeeded in inspecting what remained of his inventory of Plaintiffs' Textbooks in Amazon's fulfillment center.  *Id.*  Plaintiffs received 132 Textbooks from Iakovin's Amazon inventory.  *Id.*  Plaintiffs determined that all 132 Textbooks inspected (100%) are counterfeit.  *Id.*  The number of counterfeits found would undoubtedly have been higher if Iakovin had not violated the Injunctions and hid evidence of his illegal conduct.  Furthermore, Iakovin's failure to cooperate in this litigation and ultimate default prevented Plaintiffs from inspecting any other copies of Plaintiffs' Textbooks in his possession, custody, or control.  Thus, Iakovin blocked Plaintiffs' ability to recover equitable relief and destroyed critical evidence that very likely would have shown additional infringement of Plaintiffs' copyrights and trademarks.

*        *        *

As the facts described above illustrate, Defendants are infringing Plaintiffs' Authentic Works and Marks with full knowledge of the impropriety of their actions.  Defendants deliberately chose to source cheaper, counterfeit copies of Plaintiffs' Textbooks rather than authentic copies from the respective publishers or legitimate wholesalers.  Am. Compl. ¶ 51.  Defendants then chose to sell the counterfeit Textbooks while hiding behind the anonymity of their Online Storefronts,

many of which were created using false registration information.  In addition, Defendants are likely operating more Online Storefronts that Plaintiffs are not yet aware of.  Am. Compl. ¶ 49.  When confronted with this litigation, Defendants chose to ignore the Court's authority and, still worse, intentionally violate the Court's Injunctions.  The results of Plaintiffs' inspection of the Textbooks remaining after Defendants' violation of the Injunctions illustrate the scope of Defendants' counterfeiting activity.  Fleischman Decl. ¶ 26.  Indeed, 95% of the Textbooks (612 of 647) that Plaintiffs received from Amazon inventory held on behalf of Defendants were found to be counterfeit.  *Id.*  It is clear that Defendants have distributed counterfeit Textbooks that they knew or should have known were infringing, and will continue to do so unless stopped.

## III.     DEFENDANTS' DEFAULT

Plaintiffs initiated this action on January 17, 2018 against Doe defendants.  *See* Compl., ECF No. 1.  On the same day, Plaintiffs made an application for a temporary restraining order, order to show cause, expedited discovery order, and order authorizing alternate service.  ECF Nos. 7-13.  The Court granted Plaintiffs' request for a temporary restraining order, as well as permission to serve process on Defendants by email and conduct expedited discovery into Defendants' identities and locations.  *Ex Parte* Order, Jan. 17, 2018, ECF No. 3.  Plaintiffs served their moving papers and the Court's *Ex Parte* Order on Defendants by email on January 27, 2018.  Cert. of Service, Feb. 5, 2018, ECF No. 18.  On May 2, 2018, Plaintiffs filed the Amended Complaint, identifying Defendants as the individuals behind the Online Storefronts.  Am. Compl. ¶¶ 13-23.  Defendants have not responded to the complaint or otherwise appeared in this case.  Accordingly, upon Plaintiffs' request and supporting declaration pursuant to L.R. 55.1, the Clerk of Court entered a default against Defendants on September 24, 2018.  Cert. of Default, ECF No. 90.

## **ARGUMENT**

**I.     PLAINTIFFS ARE ENTITLED TO DEFAULT JUDGMENT AGAINST DEFENDANTS BASED ON THE WELL-PLEADED ALLEGATIONS IN THE COMPLAINT.**

Plaintiffs are entitled to default judgment under Federal Rule of Civil Procedure 55 because Defendants were properly served and have failed to appear or answer the complaint.  *See* Cert. of Default, ECF No. 90; *Citigroup Global Mkts, Inc. v. JWS 1999 Holding B.V.*, No. 08 Civ. 5362 (RJS), 2009 WL 2981912, 2009 U.S. Dist. LEXIS 83776, at *2 (S.D.N.Y. Sept. 11, 2009) ("Entry of default judgment is appropriate when the adversary process has been halted because of an essentially unresponsive party.") (internal quotations and citations omitted).

Defendants' failure to answer the complaint precludes them from raising any "meritorious defense" to the claims asserted against them because "[e]ntry of default constitutes an admission of well-pleaded allegations of the complaint by the defaulted party."  *FTC v. 1263523 Ontario, Inc.*, 205 F. Supp. 2d 218, 221 (S.D.N.Y. 2002); *see also Union of Orthodox Jewish Congregation of Am. v. Royal Food Distribs. LLC*, 665 F. Supp. 2d 434, 436 (S.D.N.Y. 2009) ("When the Court enters a default judgment, as regards liability it must 'accept [] as true all of the factual allegations of the complaint . . . .'") (quoting *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)); *Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008) ("A plaintiff's factual allegations, except those relating to damages, must be accepted as true where, as here, the defendant defaults."); *Starbucks Corp. v. Morgan*, No. 99 Civ. 1404 (LLS)(AJP), 2000 WL 949665, 2000 U.S. Dist. LEXIS 14677, at *2 (S.D.N.Y. July 11, 2000) (stating that factual allegations in complaint are to be "taken as true" when defendant is in default).  Thus, Defendants, by their default, have conceded all well-pleaded allegations in the Amended Complaint as described below.

14

A.     **Personal Jurisdiction**[1]

This Court has personal jurisdiction over Defendants based on New York's long-arm statute, which is satisfied on multiple grounds.   Plaintiffs have alleged specific personal jurisdiction under New York's long-arm statute, C.P.L.R. § 302(a), because Defendants "(a) transact business within New York or contract to supply goods, including counterfeit goods, in New York, (b) have committed acts of copyright and trademark infringement and counterfeiting in New York and in this District, and/or (c) have committed acts of copyright and trademark infringement and counterfeiting outside New York causing injury to Plaintiffs in New York, and Defendants expected or should reasonably have expected such acts to have consequences in New York, and Defendants derive substantial revenue from interstate or international commerce.   In addition, Defendants sell textbooks, including counterfeit copies of Plaintiffs' copyrighted textbooks bearing Plaintiffs' trademarks, through online storefronts on highly interactive websites, such as Amazon.com, which are accessible and sell goods to consumers in New York."   Am. Compl. ¶ 7.

1.     **Section 302(a)(1)**

Plaintiffs have alleged that Defendants have distributed counterfeit Textbooks through highly interactive online marketplaces such as Amazon, which are widely accessible in the United States, including to New York consumers.   *See id.* ¶¶ 7, 43.   These alleged activities form the very basis of Plaintiffs' copyright infringement claims and, thus, support personal jurisdiction over Defendants in New York.   Section 302(a)(1) requires nothing more.   It provides:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

---

[1] The Court possesses original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338(a).

   (1) transacts any business within the state or contracts anywhere to supply goods or services in the state….

N.Y. C.P.L.R. § 302(a)(1).  "A website that does more than provide information about a product and allows customers to purchase goods online, is a 'highly interactive website,' which may provide a basis for personal jurisdiction under CPLR § 302(a)." *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co.*, No. 15 Civ. 8459, 2016 WL 3748480, 2016 Dist. LEXIS 89149, at *7 (S.D.N.Y. July 8, 2016) (citing *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010) (finding defendant's operation of highly interactive website plus over 50 shipments of goods into New York sufficient for personal jurisdiction)); *accord Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC,* 2016 WL 7451306, 2016 U.S. Dist. LEXIS 178796, at *7-8 (S.D.N.Y. Dec. 27, 2016) (finding operation of highly interactive website through which New York consumers could place orders plus shipment of "numerous orders" to consumers in New York sufficient for personal jurisdiction); *EnviroCare Techs., LLC v. Simanovsky,* No. 11-CV-3458(JS)(ETB), 2012 WL 2001443, 2012 U.S. Dist. LEXIS 78088 at *9 (E.D.N.Y. June 4, 2012) (finding personal jurisdiction and noting that "if a website is interactive and allows a buyer in New York to submit an order online, courts typically find that the website operator is 'transacting business' in New York") (citations omitted).

     As relevant here, the operation of a storefront on a highly interactive website such as Amazon can provide the basis for exercising personal jurisdiction under New York's long-arm statute. *Lifeguard Licensing*, 2016 Dist. LEXIS 89149, at *8-9; *EnviroCare Techs.*, 2012 U.S. Dist. LEXIS 78088, at *10-11 (finding § 302(a)(1) satisfied in trademark infringement suit where defendant sold their products exclusively through Amazon and eBay).  Even though sellers are not able to control their online storefront to the same extent as they control their own website, regularly

offering and selling goods via Amazon.com, eBay.com, or other such online marketplace can form the basis for long-arm jurisdiction. *See id.*  The relevant inquiry is "the extent to which the [online marketplace] is used as a means for establishing regular business with a remote forum." *See EnviroCare Techs.*, 2012 U.S. Dist. LEXIS 78088, at *10 (internal quotations omitted).  Thus, "jurisdiction is proper when a sophisticated seller operates a commercial business through eBay or Amazon." *EnviroCare Techs.*, 2012 U.S. Dist. LEXIS 78088, at *11.  Accordingly, Defendants' operation of the Online Storefronts on Amazon, through which New York consumers could purchase counterfeit Textbooks establishes long-arm jurisdiction under § 302(a)(1).

### 2.    Section 302(a)(3)

Section 302(a)(3) of New York's long-arm statute is also satisfied.  It allows for specific personal jurisdiction over a defendant who "commits a tortious act without the state causing injury to person or property within the state . . . if he . . . expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."  N.Y. C.P.L.R. § 302(a)(3).

Here, as Plaintiffs allege and Defendants admit by their default, Defendants committed copyright and trademark infringement—both of which sound in tort.  *See Rogers v. eColor Studio*, No. 11-CV-4493 (ARR) (RER), 2013 WL 752256, 2013 U.S. Dist. LEXIS 28332, at *6 (E.D.N.Y. Feb. 7, 2013) ("Copyright infringement is a commercial tort."), *adopted by* 2013 U.S. Dist. LEXIS 27029 (E.D.N.Y. Feb. 27, 2013); *McGraw-Hill Cos., Inc. v. Ingenium Techs. Corp.*, 375 F. Supp. 2d 252, 256 (S.D.N.Y. 2005) (describing copyright and trademark infringement as torts).

The situs of Plaintiffs' injury is New York, where all Plaintiffs conduct a significant amount of their business, and where three of four Plaintiffs have their principal place of business. *See Int'l Diamond Importers, Inc. v. Med Art, Inc.*, No. 15-cv-4045, 2017 WL 2839640, 2017 U.S. Dist. LEXIS 102257, at *13 (S.D.N.Y. June 29, 2017) ("'The torts of copyright and trademark

infringement cause injury in the state where the allegedly infringed intellectual property is held.'"
(quoting *McGraw-Hill Cos.*, 375 F. Supp. 2d at 256)); *Grand v. Schwarz*, No. 15-cv-8779, 2016
WL 2733133, 2016 U.S. Dist. LEXIS 61606, at * 11 n.4 (S.D.N.Y. May 10, 2016) (holding that
trademark injury occurred in New York because, *inter alia*, damage occurs when consumers
confuse origin of defendant's services with that of trademark owner who resides and conducts
business in New York); *Lewis v. Madej*, No. 15-cv-2676, 2015 WL 6442255, 2015 U.S. Dist.
LEXIS 144384, *9 (S.D.N.Y. Oct. 23, 2015) ("District Courts in this Circuit have consistently
found that the tort of trademark infringement causes injury in the state where the allegedly
infringed intellectual property is held."); *Capitol Records, LLC v. VideoEgg, Inc.,* 611 F. Supp. 2d
349, 362 (S.D.N.Y. 2009) (finding situs of injury to be plaintiff's principal place of business, New
York, as a result of diminished copyright value).

Plaintiffs also have established that Defendants reasonably should have expected their
counterfeiting activity to have consequences in New York, where all Plaintiffs have offices and
conduct significant business.  *See McGraw-Hill Cos.*, 375 F. Supp. 2d at 256 ("It is reasonably
foreseeable that the provision of materials that infringe the copyrights and trademarks of a New
York company will have consequences in New York . . . ."); *Lewis*, 2015 U.S. Dist. LEXIS 144384,
at *9-10 (finding that trademark infringement was purposefully directed at plaintiffs, who were
domiciled in New York, such that defendant could reasonable expect injury to occur in New York).
In addition, Defendants operate their illegal counterfeiting scheme throughout the United States
and abroad.  Defendants operate the Online Storefronts from their various locations, including
Jordan, China, India, California, and Indiana, and sell counterfeit Textbooks via Amazon directly
to consumers throughout the United States and beyond.  *See* Am. Compl. ¶¶ 13-23.  Thus,
Defendants necessarily derive substantial revenue from interstate and international commerce.

Accordingly, the Court has personal jurisdiction over Defendants under CPLR § 302(a)(3).

### 3.    Due Process

If the forum's long-arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with constitutional due process requirements. *Chloe*, 616 F.3d at 164 (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). The due process analysis involves two related inquiries: "minimum contacts" and "reasonableness." *Id.*

The minimum contacts inquiry has two prongs: (1) whether the defendant purposefully availed itself of the privilege of doing business in the forum, thus invoking the benefits and protections of the forum's laws; and (2) whether the controversy at issue arose out of or relates to the defendant's in-forum conduct. *See, e.g., Chew v. Dietrich,* 143 F.3d 24, 27-29 (2d Cir. 1998). Here, minimum contacts are satisfied for the same reasons identified with respect to New York's long-arm statute. Plaintiffs allege that Defendants offered and sold counterfeit Textbooks to consumers throughout the United States, including in this District. *Compare* Am. Compl. ¶ 43 *with Chloe,* 616 F.3d at 171-72 & n.8 (holding that by shipping goods to New York defendant's conduct was "*purposefully directed toward the forum State*" and noting that jurisdiction is proper where a defendant delivers its products into the stream of commerce and subsequently injures a forum trademark holder) (internal quotations and citation omitted). Plaintiffs also allege that Defendants engaged in intentionally tortious conduct aimed at Plaintiffs, who reside and/or are domiciled in New York, and who conduct a significant amount of their business in New York. *See* Am. Compl. ¶¶ 1, 58; Publishers' Decl. ¶ 3.

The exercise of personal jurisdiction over Defendants in these circumstances also satisfies the relevant factors for reasonableness.[2] As to burden, the first factor, Defendants are in default

---

[2] In determining whether the exercise of jurisdiction is reasonable, courts consider five factors: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of

and therefore cannot make any claim that they have been burdened.  Second, New York has "a manifest interest in providing effective means of redress for its residents."  *Chloe,* 616 F.3d at 173. Third, Plaintiffs reside in New York and many of their witnesses are located here.  Fourth, this case is now at the default judgment stage and will be most efficiently concluded here.  Fifth, all the states share with New York an interest in protecting intellectual property rights and stopping counterfeiting.

### B.   Liability for Copyright Infringement

In order to prevail on a case of direct copyright infringement, Plaintiffs must demonstrate that: (1) they own valid copyrights; and (2) the defendant violated one or more of the exclusive rights in 17 U.S.C. § 106.  *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *JCW Invs., Inc. v. Novelty, Inc*., 482 F.3d 910, 914 (7th Cir. 2007).

Here, Plaintiffs allege, *inter alia*, that they are the owners or exclusive licensees of all rights, title, and interest in and to their respective Authentic Works, which have never been assigned, licensed, or otherwise transferred to any Defendant.  Am. Compl. ¶ 29; Publishers' Decl. ¶ 5.  Plaintiffs, or their affiliates, have duly registered their respective copyrights in the Authentic Works.  *See id.*  Registration alone is *prima facie* evidence that the plaintiff owns valid copyrights for the works at issue.  17 U.S.C. § 410(c); *JCW Invs., Inc*., 482 F.3d at 914-15.

Defendants, with knowledge of Plaintiffs' rights in the Authentic Works, infringed Plaintiffs' copyrights by deliberately offering for sale, selling, and distributing counterfeit copies of the Authentic Works for profit.  Am. Compl. ¶ 62 ("Specifically, Defendants infringed

---

the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Chloe*, 616 F.3d at 164 (quoting *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 113 (1987)).

Plaintiffs' exclusive rights to distribute their copyrighted works. They did so by, among other things, selling the Counterfeit Books for profit, without Plaintiffs' permission, license, or consent."). The exclusive rights specified under the Copyright Act include the right to distribute copies of the copyrighted works to the public. 17 U.S.C. §§ 106(1), 602(a)(2); *see also Blue Ribbon Pet Prods. v. Rolf C. Hagen (USA) Corp.*, 66 F. Supp. 2d 454, 462 (E.D.N.Y. 1999). Moreover, Defendants' infringing acts were deliberate, intentional, malicious, and willful, which caused and continue to cause Plaintiffs irreparable damage in violation of the Copyright Act. *See* Am. Compl. ¶¶ 63-64; Publishers' Decl. ¶¶ 12-13. Because these factual allegations are deemed true upon default, Plaintiffs have sufficiently established that Defendants are liable for willful copyright infringement.

### C.    Liability for Trademark Infringement

The factual allegations in the Amended Complaint also establish Defendants' liability for trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1)(a). To prove this claim, a plaintiff must show that it owns a valid and legally protectable mark, and the defendant's use of the mark to identify and/or promote their goods is likely to cause confusion among consumers. *See Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93, 102 (2d Cir. 2010). Where a plaintiff holds a federal registration of an incontestable mark, such registration constitutes conclusive evidence of its validity and ownership. 15 U.S.C. § 1115(b); *Cullman Ventures, Inc. v. Columbian Art Works, Inc.*, 717 F. Supp. 96, 111 (S.D.N.Y. 1989).

With respect to the second element, courts have developed a seven-factor test to determine the likelihood of confusion by use of a protected trademark. In cases that involve counterfeit goods, however, "a likelihood of confusion exists as a matter of law." *Coach, Inc. v. Chaos of Muncie*, No. 1:11-cv-0505-JMS-DML, 2012 WL 896420, 2012 U.S. Dist. LEXIS 35062, at *7-8 (S.D. Ind. Mar. 15, 2012); *accord Philips Morris USA Inc. v. Felizardo*, No. 03 Civ. 5891 (HB),

21

2004 WL 1375277, 2004 U.S. Dist. LEXIS 11154, at *18 (S.D.N.Y. June 18, 2004) (finding step-by-step likelihood of confusion analysis not required as "counterfeit marks are inherently confusing") (internal quotations and citations omitted); *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) ("In this case . . . the Court need not undertake a factor-by-factor analysis . . . because counterfeits, by their very nature cause confusion.").

Here, Plaintiffs allege that they are the owners or exclusive licensees of Plaintiffs' Marks, which are distinctive, arbitrary, and in some cases, now incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.  Am. Compl. ¶ 30; Publishers' Decl. ¶ 6.  Plaintiffs have alleged that Defendants, without Plaintiffs' authorization, have used Plaintiffs' Marks to advertise, promote, and sell their counterfeit copies of Plaintiffs' Textbooks.  Am. Compl. ¶ 75; Publishers' Decl. ¶ 9.  Plaintiffs have made purchases from Defendants that confirm Defendants are selling counterfeit Textbooks that also bear Plaintiffs' Marks.  Publishers' Decl. ¶¶ 7-8.  Moreover, Plaintiffs allege that such sales have caused and are likely to continue to cause confusion, mistake, and/or deception as to the source or origin of Defendants' goods, in that the public, and others, are likely to believe that Defendants' goods are provided by, sponsored by, approved by, licensed by, affiliated with, or in some other way legitimately connected with Plaintiffs, all to Plaintiffs' irreparable harm.   Am. Compl. ¶ 76; Publishers' Decl. ¶ 12.   Lastly, Plaintiffs allege that Defendants' infringement of Plaintiffs' Marks was willful and intentional or deliberately reckless. Am. Compl. ¶ 77.  Because these factual allegations are deemed true upon default, Plaintiffs have sufficiently established that Defendants are liable for willful trademark infringement.

## II.   PLAINTIFFS ARE ENTITLED TO MAXIMUM STATUTORY DAMAGES FOR DEFENDANTS' WILLFUL INFRINGEMENT

Once liability is established against a defaulting defendant, a court must then conduct an inquiry to ensure that there is a basis for the damages specified in a default judgment.  *See Bravado*

*Int'l Group Merch. Servs. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 189-90 (E.D.N.Y. 2009).  Plaintiffs

elect to seek statutory damages in this case.  Statutory damages may serve as both compensatory

and punitive relief for plaintiffs who have been harmed by a willful infringer.  *Sara Lee Corp. v.*

*Bags of New York, Inc.*, 36 F. Supp. 2d 161, 165 (S.D.N.Y. 1999).  Statutory damages also serve

as a deterrent against future infringement.  *See Sony BMG Music Entm't v. Tenenbaum,* 719 F.3d

67, 71 (1st Cir. 2013) ("Statutory damages under the Copyright Act are designed not only to

provide reparation for injury, but also to discourage wrongful conduct.") (internal quotations

omitted); *see also Silhouette Int'l Schmied AG v. Chakhbazian,* No. 04 Civ. 3613 (RJH) (AJP),

2004 WL 2211660, 2004 U.S. Dist. LEXIS 19787, at *6 (S.D.N.Y. Oct. 4, 2004); *Rolex Watch*

*U.S.A., Inc. v. Brown,* No. 01 Civ. 9155 (JGK) (AJP), 2002 WL 1226863, 2002 U.S. Dist. LEXIS

10054, at *8 (S.D.N.Y. June 5, 2002).

Plaintiffs seek damages against each Defendant separately with the exception of

Defendants Vijay Kumar and Anita Rain Rani, who operated the HEAVYHOUSE-BOOKS Online

Storefront jointly.  *See* Fleischman Decl. ¶ 29.  Accordingly, Plaintiffs seek joint and several

liability for damages against only Defendants Vijay Kumar and Anita Rain Rani.  *See id.*  For each

Defendant(s) and their respective Online Storefront, Plaintiffs elect to recover statutory damages

for willful copyright infringement under the Copyright Act for some of the Authentic Works and

willful trademark infringement under the Lanham Act for the other Authentic Works.  *See id.,* Ex.

1.  While there is conflict within the case law, some courts, including in this District, have

questioned whether a party may recover both trademark and copyright damages based on the same

act of infringement.  *See John Wiley & Sons, Inc. v. Book Dog Books, LLC*, --- F. Supp. 3d ---,

Case Nos. 13cv816, 16cv7123, 2018 WL 3956508, at * (S.D.N.Y. Aug. 17, 2018) (citing cases

and holding that plaintiffs-publishers had not been awarded a double recovery where they sought

"trademark damages for one set of works and copyright damages for another non-overlapping set"). While Plaintiffs believe that they are legally permitted to recover both sets of damages for the two different types of harm protected by two different types of intellectual property set forth in two different statutory regimes, Plaintiffs have chosen, in this case, to avoid raising the issue by only seeking damages under one statute per infringement. *See* Fleischman Decl. ¶ 30. So, while Plaintiffs are seeking damages under both the Copyright and Lanham Acts, they are not for any Defendant's single act of infringement seeking statutory awards for both copyright and trademark damages.

### A.     Statutory Damages Under the Copyright Act

The Copyright Act provides for statutory damages in an amount not less than $750 or more than $30,000 per copyright infringed, as the court considers just. 17 U.S.C. § 504(c)(1). In cases of willful copyright infringement, a court may increase the award up to $150,000 per copyright infringed. 17 U.S.C. § 504(c)(2). Thus, courts have wide discretion in setting an amount of statutory damages for copyright infringement. *See Fitzgerald Publ'g Co. v. Baylor Publ'g Co.,* 807 F.2d 1110, 1116 (2d Cir. 1986). In determining an appropriate damage award under the Copyright Act, "courts look to considerations such as: (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant." *See Union of Orthodox Jewish Congregation of Am.*, 665 F. Supp. 2d at 436 (quoting *Fitzgerald Pub. Co.*, 807 F.2d at 1117).

Courts in this District do not hesitate to award the maximum in statutory damages for willful infringement when appropriate. *See, e.g., Cengage Learning, Inc., et al. v. Doe 1 d/b/a*

*bargainsofmaine, et al.,* Case No. 1:18-cv-403-RJS, Def. J. and Perm. Inj. at 5-6 (S.D.N.Y. May 11, 2018) (ECF No. 52) (awarding textbook publishers maximum statutory damages of $27,600,000 against four defendants for willful copyright and trademark infringement); *McGraw-Hill Global Educ., LLC, et al. v. Peng, et al.,* Case No. 1:17-cv-6224-RJS, Def. J. and Perm. Inj. at 4 (S.D.N.Y. Jan. 5, 2018) (ECF No. 58) (same; in the amount of $15,900,000); *McGraw-Hill Global Educ., LLC v. Jarrad,* No. 15-CV-2579-VEC, Def. J. and Perm. Inj. at 3 (S.D.N.Y. Jan. 8, 2016) (ECF No. 52) (awarding maximum damages for willful copyright infringement totaling $5,500,000); *Elsevier, Inc. v. Kozlov*, No. 14-Civ-2422 (GHW), Def. J. and Perm. Inj. at 3 (S.D.N.Y. Apr. 13, 2015) (ECF No. 58) (awarding maximum damages for willful copyright infringement totaling $37,500,000); *True Religion Apparel, Inc. v. Xiaokang Lei*, et al., No. 11-Civ-8242 (HB), Def. J. and Perm. Inj. at 11 (S.D.N.Y. Mar. 12, 2012) (ECF No. 31) (awarding maximum damages for willful copyright infringement).   Circuit Courts, including the Second Circuit, have upheld such awards for willful copyright infringement.   *See Kepner-Tregoe, Inc. v. Vroom,* 186 F.3d 283, 288 (2d Cir. 1999) (upholding then-maximum statutory damages award of $100,000); *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488, 497 (4th Cir. 1996) (upholding then-maximum statutory damages award of $100,000 per infringed work).

### B.   Statutory Damages Under the Lanham Act

Similarly, the Lanham Act provides for statutory damages in an amount not less than $1,000 nor more than $200,000 per counterfeit mark per type of good offered.   15 U.S.C. § 1117(c)(1).   The Lanham Act also permits increased awards—up to $2,000,000 for each counterfeit mark per type of good offered—for willful trademark infringement.   15 U.S.C. § 1117(c)(2).   Courts have wide latitude in determining the amount of statutory damages to award. *See id.; Coach Inc. v. Allen*, No. 11-Civ-3590 (CM), 2012 WL 2952890, 2012 U.S. Dist. LEXIS

100829, at \*23 (S.D.N.Y. July 19, 2012) ("Although the Lanham Act does not provide guidelines for courts to consider in awarding statutory damages, courts look to the analogous provision of the Copyright Act, which gives the court wide discretion to determine what amount of damages should be awarded within the minimum and maximum bounds proscribed under the Lanham Act.").

In similar actions, courts in this District have granted plaintiffs the maximum statutory amount for willful trademark counterfeiting. *See, e.g., Allen*, 2012 U.S. Dist. LEXIS 100829, at \*28-29 (awarding $44 million in statutory damages for trademark infringement); *Yahoo! Inc. v. XYZ Cos.*, 872 F. Supp. 2d 300, 308 (S.D.N.Y. 2011) (awarding $27 million in statutory damages); *North Face Apparel Corp. v. Fujian Sharing Imp. & Exp. Ltd*, No. 10-Civ-1630 (AKH), Def. J. and Perm. Inj. at 5 (S.D.N.Y. Sept. 13, 2010) (ECF No. 29) (awarding $78 million in statutory damages).

### C. Plaintiffs' Request for Statutory Damages Is Appropriate

Plaintiffs seek damages against each Defendant separately with the exception of Defendants Vijay Kumar and Anita Rain Rani, who operated the HEAVYHOUSE-BOOKS Online Storefront jointly. Plaintiffs seek joint and several liability for damages against only Defendants Vijay Kumar and Anita Rain Rani. As discussed above, for each Defendant and their respective Online Storefront, and for each textbook title infringed by such Defendant, Plaintiffs elect to recover statutory damages under the Copyright Act for copyright infringement *or* under the Lanham Act for trademark infringement. Thus, Plaintiffs do not seek statutory damages under both the Copyright Act and the Lanham Act for any one copyrighted work infringed by a particular Defendant. In addition, while some of Plaintiffs' trademarks are protected by multiple registrations, Plaintiffs seek statutory damages per imprint for each Defendant, not per registration. Finally, Plaintiffs seek maximum statutory damages for willful infringement for only certain Defendants. *See* Fleischman Decl. ¶ 32, Ex. 1. For such Defendants, Plaintiffs seek $150,000 per

copyright infringement and $2,000,000 per trademark infringement. *Id.* For the remaining Defendants (Nidia Espinoza and Vijay Kumar and Anita Rani, Plaintiffs seek $30,000 per copyright infringement and $200,000 per trademark infringement. *Id.* Accordingly, Plaintiffs seek statutory damages totaling $42,810,000 for Defendants' willful copyright and trademark infringement. These damages are broken down by Defendant/Online Storefront as follows:

| Defendants | Copyright Damages | Trademark Damages | Total Damages |
|---|---|---|---|
| Imran Awan | $150,000 | $4,000,000 | $4,150,000 |
| Amro T. Awwad | $600,000 | $4,000,000 | $6,400,000 |
| Rong Li | $450,000 | $6,000,000 | $6,450,000 |
| Anita Rani and Vijay Kumar | $90,000 | $400,000 | $490,000 |
| Ammar A. Mazrui | $1,350,000 | $6,000,000 | $7,350,000 |
| Michael Pao | $300,000 | $6,000,000 | $6,300,000 |
| Nidia Espinoza | $120,000 | $600,000 | $1,050,000 |
| Manish K. Singh | $300,000 | $6,000,000 | $6,300,000 |
| Yaroslav Iakovin | $450,000 | $6,000,000 | $6,450,000 |
| **TOTAL** | **$3,810,000** | **$39,000,000** | **$42,810,000** |

*Id.* ¶ 32, Ex. 1.

This award is a fraction of what it could be if this case were litigated against Defendants and the full extent of their infringement revealed. The damages amount is based on only the textbook titles and trademarks identified in Plaintiffs' test purchasing, without the benefit of merits discovery. Thus, Plaintiffs seek damages on only a subset of the total number of potentially

infringing works.  As described below, *each and every factor* weighs heavily in favor of Plaintiffs' requested damage award.

Expenses Saved and Profits Reaped:  While Defendants' default prevented Plaintiffs from determining Defendants' actual profits, it is clear Defendants reaped a substantial sum of money from their infringing business.  In test purchases, Plaintiffs bought 67 counterfeit Textbooks from Defendants at below market prices.  *Id*. ¶ 7.  While these prices are a fraction of the list price for legitimate copies of these Textbooks, Defendants avoided the very considerable expense associated with publishing a Textbook.  *See id.; infra* (Value of the Copyrights).

Revenues Lost by Plaintiffs:  Legitimate sales and rentals of Plaintiffs' copyrighted Textbooks represent a substantial portion of their annual revenues, and are critical to Plaintiffs' financial health.  Publishers' Decl. ¶¶ 9-13.  However, Defendants' default makes it impossible to calculate Plaintiffs' actual lost revenues as a result of Defendants' infringement.  Nonetheless, there is no doubt that Defendants' infringing activity steals the fruits of Plaintiffs' and their authors' creative effort and monetary investment.  Every sale of a counterfeit displaces the sale of a legitimate textbook.  In the limited time period of Plaintiffs' sample purchasing program aimed at these Defendants, Plaintiffs purchased 67 counterfeit Textbooks across 42 different titles.  Fleischman Decl. ¶ 7.  Full discovery very likely would have shown that these counterfeits were just the tip of the iceberg.

Value of the Copyrights:  Plaintiffs are among the leading higher education publishers in the world.  Am. Compl. ¶ 2; Publishers' Decl. ¶ 3.  They invest heavily in book publishing.  Am. Compl. ¶ 26; Publishers' Decl. ¶¶ 4, 13.  Each year they incur substantial costs for author royalties and other costs of content creation or licensing, copyediting, layout, printing, binding, distribution, and for support of their editorial offices.  Am. Compl. ¶ 26; Publishers' Decl. ¶ 13.  Plaintiffs also

make substantial investments in advertising and promoting their Textbooks under their U.S.-registered trade and service marks, as well as in their goodwill and reputations for high-quality educational content. *See* Publishers' Decl. ¶¶ 4, 12. Their copyrighted works are undeniably very valuable.

<u>Defendants' Willfulness</u>:  Willfulness is determined by "whether the defendant had knowledge that [its] conduct represented infringement or recklessly disregarded the possibility." *Phillip Morris USA Inc. v. Marlboro Express*, No. 03-CV-1161 (CPS), 2005 WL 2076921, 2005 U.S. Dist. LEXIS 40359, at *20 (E.D.N.Y. Aug. 26, 2005). Knowledge "need not be proven directly but may be inferred from the defendant's conduct." *N.A.S. Imp., Corp. v. Chenson Enters., Inc.*, 968 F.2d 250, 252 (2d Cir. 1992) (internal quotations and citation omitted); *Fitzgerald Publ'g*, 807 F.2d at 1115 (holding that proof of actual knowledge is not necessary).

Plaintiffs have alleged that Defendants' conduct was willful and through their default Defendants have admitted that allegation. Am. Compl. ¶¶ 63, 70, 77. This alone is sufficient for a finding of willfulness. *Louis Vuitton Malletier v. Carducci Leather Fashions, Inc.*, 648 F. Supp. 2d 501, 504 (S.D.N.Y. 2009) ("Here, by virtue of its default, [defendant] has admitted [plaintiff's] allegation that it acted knowingly and intentionally or with reckless disregard or willful blindness to [plaintiff's] rights."); *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003).

Defendants sell their counterfeit Textbooks in virtual anonymity via Amazon. *See* Am. Compl. ¶ 3; Seymour Decl. ¶ 9. Still, Defendants used false names and/or addresses to register their storefronts on Amazon to further conceal their identities.[3]  *See* Am. Compl. ¶¶ 39-40;

---

[3] *Cf.* 17 U.S.C. § 504(c)(3)(A) ("In a case of infringement, it shall be a rebuttable presumption that the infringement was committed willfully for purposes of determining relief if the violator … knowingly provided or knowingly caused to be provided materially false contact information to a domain name registrar, domain name registry, or other domain name authority, in registering, maintaining, or renewing a domain name used in connection with the infringement.").

Fleischman Decl. ¶¶ 8, 18, 22.  Moreover, Defendants took affirmative steps to destroy their inventory or have Amazon return it to them in direct violation of the Injunctions.  Fleischman Decl. ¶¶ 9, 16, 23, 25.  Defendants' infringement is most certainly egregious and willful.

Lack of Cooperation:  Many of the Defendants have completely ignored and refused to cooperate in this litigation.  Having been served with Plaintiffs' pleadings and clear notice of their infringing conduct, Defendants stopped communicating with Plaintiffs or were unresponsive from the outset.  Even when initially responsive, Defendant Pao lied to Plaintiffs about his inventory, and additional storefront and sales of Plaintiffs' Textbooks.  Fleischman Decl. ¶ 19.  To be sure, Defendants' default has ensured that the full scale of their infringement and the resulting damage will remain unknown.  Defendants' default also has prevented Plaintiffs from discovering valuable information that could aid their anti-counterfeiting efforts, such as the original source of the counterfeits (if not Defendants) and where in the marketplace and to whom the counterfeits have been sold.

Deterrent Effect:  Defendants' activities must be deterred.  The judgment entered in this action should discourage Defendants and others from engaging in copyright and trademark infringement.  "The purpose of § 1117 of the Lanham Act is to take the incentive out of counterfeiting and strengthen the civil remedies against counterfeiters."  *Allen*, 2012 U.S. Dist. LEXIS 100829, at *27 (quoting S. Rep. No. 117 (104th Cong. 1995)); *see also Burberry Ltd. v. Euro Moda, Inc.*, No. 08 Civ. 5781 (CM)(AJP), 2009 WL 4432678, 2009 U.S. Dist. LEXIS 113407, at *15 (S.D.N.Y. Dec. 4, 2009) ("[W]here, as here, a defendant is shown to have acted willfully, a statutory award should incorporate not only a compensatory, but also a punitive component to discourage further wrongdoing by the defendants and others.") (internal quotations and citations omitted); *Broad. Music, Inc. v. PAMDH Enters.*, No. 13-Civ-2255 (KMW), 2014 WL

30

2781846, 2014 U.S. Dist. LEXIS 84409, at \*8 (S.D.N.Y. June 19, 2014) (highlighting the deterrent effect on the copyright infringer and third parties as a factor in awarding statutory damages).

Defendants, and countless infringers like them, have built businesses around illicit online storefronts selling infringing goods in virtual anonymity and with impunity.  It is impossible for Plaintiffs to bring suit against all or even a substantial portion of counterfeiters.  Thus, maximum damage awards against those defendants that Plaintiffs pursue in litigation is essential to deterring others engaged in the same unlawful conduct.  Defendants will continue to find ways to sell counterfeit books for their own illegal profit unless this cycle is broken.  In light of this, Plaintiffs' request for statutory damages is reasonable and appropriate in this case.

> ### D.   An Evidentiary Hearing to Determine Statutory Damages Is Not Required or Necessary.

Plaintiffs' request for an award of statutory damages does not require the Court to conduct an evidentiary hearing.  Courts routinely award damages post-default without an evidentiary hearing based on affidavits submitted by the plaintiff.  *See Church & Dwight Co. v. Kaloti Enters. of Mich., L.L.C.*, 697 F. Supp. 2d 287, 295 (E.D.N.Y. 2009) ("Where the issue is statutory damages, inquest by paper record is particularly appropriate."); *Rolex Watch U.S.A., Inc.,* 2002 U.S. Dist. LEXIS 10054, at \*5 ("Here, of course, the issue is statutory damages, making it even more appropriate to hold the inquest on a paper record."); *Doe 1 d/b/a bargainsofmaine,* Case No. 1:18-cv-403-RJS, Def. J. and Perm. Inj. at 5-6 (awarding statutory damages without an inquest); *Peng,* Case No. 1:17-cv-6224-RJS, Def. J. and Perm. Inj. at 4 (same)**;** *McGraw-Hill Global Educ. v. Jarrad,* No. 15-CV-2579-VEC, Def. J. and Perm. Inj. at 3 (same); *see also Tamarin v. Adams Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (hearing unnecessary to assess post-default damages where the court relied on affidavits and documentary evidence).  Therefore, a hearing to award statutory damages here is not necessary.

III.    **DEFENDANTS SHOULD BE PERMANENTLY ENJOINED**

"A court may issue an injunction when the moving party establishes that there is a statutory basis for relief and that it meets the prerequisites for the issuance of an injunction.  The second of these conditions requires that a party seeking an injunction demonstrate irreparable harm and the absence of an adequate remedy at law." *TigerCandy Arts, Inc. v. Blairson Corp.*, No. 09 Civ. 6215 (GBD) (FM), 2012 WL 760168, 2012 U.S. Dist. LEXIS 35269, at *20-21 (S.D.N.Y. Feb. 23, 2012) (internal quotations and citation omitted).  The first requirement is clearly met because both the Copyright Act and the Lanham Act vest the Court with the power to grant injunctive relief.  17 U.S.C. § 502(a); 15 U.S.C. § 1116(a); *see also TigerCandy Arts*, 2012 U.S. Dist. LEXIS 35269, at *21.  The second requirement is also easily satisfied here.

Defendants through their default have admitted to infringing the Authentic Works and Plaintiffs' Marks.  As a result of Defendants' infringement, Plaintiffs have been harmed and will continue to suffer injury, for which they have no adequate remedy at law.  Defendants' distribution of counterfeit Textbooks deprives Plaintiffs of revenue and injures Plaintiffs' names, reputations, and goodwill.  Am. Compl. ¶¶ 27, 52, 58; Publishers' Decl. ¶¶ 4, 9, 12.  The damage that Defendants are causing cannot be undone.  Moreover, given Defendants' egregious infringement and indifference to this lawsuit, Defendants may simply ignore an award of damages and continue to sell counterfeit Textbooks under different seller names or aliases.  An injunction would put others in active concert or participation with Defendants on notice that they must not assist Defendants in continuing their infringement.  In sum, all of the factors weigh in favor of a permanent injunction prohibiting Defendants, and all those in active concert or participation with them, from further infringing Plaintiffs' copyrights and trademarks.

## **CONCLUSION**

Defendants' infringement of Plaintiffs' Authentic Works and Marks has irreparably harmed, and continues to harm, Plaintiffs.  Defendants have refused to appear to defend this lawsuit, choosing instead to hide from the Court.  Plaintiffs, therefore, respectfully request that the Court: 1) enter default judgment against Defendants Imran Awan, Amro T. Awwad, Rong Li, Anita Rain Rani, Vijay Kumar, Ammar Abdulwahid Mazrui, Michael Pao, Nidia Espinoza, Manish Kumar Singh, and Yaroslav Iakovin; 2) award statutory damages of $42,810,000, plus post-judgment interest; and 3) permanently enjoin Defendants from infringing Plaintiffs' copyrights and trademarks.


Dated:  September 28, 2018                   Respectfully submitted,


                                             */s/ Kerry M. Mustico*
                                             Matthew J. Oppenheim
                                             Kerry M. Mustico
                                             OPPENHEIM + ZEBRAK, LLP
                                             5225 Wisconsin Ave. NW, Suite 503
                                             Washington, DC 20015
                                             Tel:  202-480-2999
                                             matt@oandzlaw.com
                                             kerry@oandzlaw.com


                                             *Attorneys for Plaintiffs*