## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

PEARSON EDUCATION, INC.; ELSEVIER, INC.; MCGRAW-HILL GLOBAL EDUCATION HOLDINGS, LLC; and CENGAGE LEARNING, INC.,

        Plaintiffs,

   v.

IMRAN AWAN; AMRO T. AWWAD; RONG LI; ANITA RAIN RANI; VIJAY KUMAR; AMMAR ABDULWAHID MAZRUI; MICHAEL PAO (A/K/A MATTHEW WATSON); NIDIA ESPINOZA; MANISH KUMAR SINGH (A/K/A "MAX DEN" and "SHYAM"); ROSCHELLE T. SALMON; and YAROSLAV IAKOVIN,

        Defendants.

**Case No. 1:18-cv-402-DLC**

## DECLARATION OF MATTHEW FLEISCHMAN

I, Matthew Fleischman, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1.     I am an attorney licensed to practice law in the State of New York and admitted to practice in the United States District Court for the Southern District of New York. I am an associate in the law firm, Oppenheim + Zebrak LLP, which represents Plaintiffs Pearson Education, Inc., Elsevier, Inc., McGraw-Hill Global Education Holdings, LLC, and Cengage Learning, Inc. (collectively, "Plaintiffs") in this action. I make the statements herein based on personal knowledge and/or my review of the documents and information referenced herein. If called upon to do so, I am able to testify competently to the matters set forth below.

2.     I submit this declaration in support of Plaintiffs' Motion for Default Judgment and Permanent Injunction against Defendants Imran Awan, Amro T. Awwad, Rong Li, Vijay Kumar, Anita Rain Rani, Ammar Abdulwahid Mazrui, Michael Pao, Nidia Espinoza, Manish Kumar

Singh, and Yaroslav Iakovin (collectively, "Defendants") in this case.

3.      Plaintiffs initiated this action on January 17, 2018 against Doe defendants.  *See* Compl., ECF No. 1.  Plaintiffs conducted expedited discovery as provided in the *Ex Parte* Order, Jan. 17, 2018, ECF No. 3, and served subpoenas on Amazon.com, Inc. ("Amazon") and financial institutions to determine the identities of the individuals or entities behind operating the online storefronts identified in the Complaint.  On May 2, 2018, Plaintiffs filed an Amended Complaint naming the Defendants.  *See* Am. Compl. ¶¶ 14-30.

4.      Plaintiffs served the Amended Complaint and Summons on Defendants on May 3, 2018.  *See* Aff. of Service, ECF No. 58.  Accordingly, Defendants' answers to the Amended Complaint were due on May 24, 2018.

5.      None of Defendants responded to the Amended Complaint or otherwise appeared in this case.  Accordingly, the Clerk of Court entered a default against Defendants on September 24, 2018.  Cert. of Default, ECF No. 90.

## PLAINTIFFS' INVESTIGATION AND EXPEDITED DISCOVERY

6.      Before filing suit in this action, Plaintiffs made purchases from multiple online storefronts on several online marketplaces, including Amazon, of Plaintiffs' publications, which include physical and digital textbooks, as well as online publications (collectively, "Textbooks").

7.      Through their pre-litigation purchases and investigation, and expedited discovery, Plaintiffs confirmed that Defendants sell counterfeit textbooks through multiple online seller accounts on Amazon (the "Online Storefronts"), including:

(1)      Atmi7654 (Seller ID A1CG7ES2FSMS9W), operated by Defendant Imran Awan;

(2)      BookExperts (Seller ID A2N0FSW82YCEBR), operated by Defendant Amro T. Awwad;

(3)     Clarence Wood (Seller ID A1W0N0RRQL82E1), operated by Defendant Rong Li;

(4)     HEAVYHOUSE-BOOKS (Seller ID A3FMQR7FXRFI0W), operated by Defendants Vijay Kumar and Anita Rain Rani;

(5)     Huge Crit (Seller ID A3DDSCP3ACKEWO), operated by Defendant Ammar Abdulwahid Mazrui;

(6)     Matthew's Book Store (Seller ID A2DO668BPH25DT), operated by Defendant Michael Pao;

(7)     Nidiiz (Seller ID AXULVU20BNHVF), operated by Defendant Nidia Espinoza;

(8)     STAY SMART (Seller ID A3GO8CXMLXUW0P), operated by Defendant Manish Kumar Singh; and

(9)     United TwinStar (Seller ID A3HUO8588XNGTY), operated by Yaroslav Iakovin.

Plaintiffs purchased 67 counterfeit copies of their textbooks across 42 different titles (the "Counterfeit Books") from Defendants' Online Storefronts at below market prices.

**A.      Defendant Imran Awan d/b/a Atmi7654 (Seller ID A1CG7ES2FSMS9W)**

8.      Prior to filing suit, Plaintiffs purchased counterfeit copies of three different Textbooks from Defendant Awan's Online Storefront, atmi7654.  Awan registered his Online Storefront with Amazon using false addresses in Pocatello, Idaho and Chicago, Illinois.  In fact, Awan lives in Pakistan, which Plaintiffs only learned from Defendants' bank records obtained with a subpoena.

9.      Notwithstanding having been provided with the Temporary Restraining Order (ECF No. 3) and Preliminary Injunction (ECF No. 34) (collectively, the "Injunctions"), Awan violated the Injunctions issued by this Court in this case by destroying his inventory of Plaintiffs' Textbooks before Plaintiffs were permitted to inspect them, as provided for in the Injunctions. Specifically, Awan instructed Amazon to destroy the remaining copies of Plaintiffs' Textbooks in his inventory at Amazon's fulfillment center, which were subject to the Injunctions.

**B.    Defendant Amro T. Awwad d/b/a BookExperts (Seller ID A2N0FSW82YCEBR)**

10.     Prior to filing the Complaint, Plaintiffs purchased counterfeit copies of six different Textbooks from Defendant Awwad's Online Storefront, BookExperts.  Defendant Awwad and his brother, Ammar Awwad, sell counterfeit copies of Plaintiffs' Textbooks through multiple online marketplaces.  Defendant Awwad and his brother live close to each other and have moved from state to state together.  Over the past two years, Plaintiffs have sent multiple infringement notices to the Awwads via the online marketplaces on which they operate.  Thus, Defendant and his brother have continued to infringe Plaintiffs' copyrights and trademarks despite having notice that their sales of Plaintiffs' Textbooks were infringing since at least January 13, 2016.  While Defendant Awwad initially communicated with Plaintiffs' counsel regarding this lawsuit, he refused to answer questions about his connection to his brother's counterfeit sales and told Plaintiffs' counsel that he would rather have default judgment entered against him.

11.     Awwad also violated the Court's Injunctions and spoliated evidence.  Specifically, Plaintiffs learned through information received from Amazon that Awwad instructed Amazon to ship copies of Plaintiffs' textbooks in his inventory at Amazon's fulfillment center back to him.

12.     Despite Awwad's violation of the Injunctions, Plaintiffs succeeded in inspecting what remained of his inventory of Plaintiffs' Textbooks in Amazon's fulfillment center.  Plaintiffs received 100 Textbooks from Awwad's Amazon inventory.  Plaintiffs concluded that, at least, 73 out of the 100 Textbooks inspected are counterfeit.

**C.    Defendant Rong Li d/b/a Clarence Wood (Seller ID A1W0N0RRQL82E1)**

13.     Prior to filing the Complaint, Plaintiffs purchased ten counterfeit copies their Textbooks (six different titles) from Defendant Li's Online Storefront, Clarence Wood.  Defendant Li took numerous steps to hide her identity, so it would be difficult to identify who was operating

the storefront.  When creating the storefront, Li provided Amazon with a fictitious name ("Clarence Wood") and a fake address in Cherry Hill, New Jersey.  Rather than link her Online Storefront to her own credit card, Li purchased a virtual credit card in a fake name to further hide her identity.  It was only because Plaintiffs obtained records associated with the bank account linked to and receiving proceeds from Li's Online Storefront that Plaintiffs were finally able to uncover Li's true name and apparent location in China.

14.     Plaintiffs inspected what remained of her inventory of Plaintiffs' Textbooks in Amazon's fulfillment center.  Plaintiffs received 208 Textbooks from Li's Amazon inventory. Plaintiffs determined that, at least, 206 out of the 208 (99%) Textbooks inspected are counterfeit.

**D.     Defendants Vijay Kumar and Anita Rani d/b/a HEAVYHOUSE-BOOKS (Seller ID A3FMQR7FXRFI0W)**

15.     Prior to filing the Complaint, Plaintiffs six counterfeit copies of their Textbooks (four different titles) from Defendants Kumar and Rani's Online Storefront, HEAVYHOUSE-BOOKS.  After the Injunctions were issued, Plaintiffs inspected what remained of her inventory of Plaintiffs' Textbooks in Amazon's fulfillment center.  Plaintiffs received 91 Textbooks from Kumar and Rani's Amazon inventory.  Plaintiffs determined that, at least, 85 out of the 91 Textbooks inspected (93%) are counterfeit.

**E.     Defendant Ammar Abdulwahid Mazrui d/b/a Huge Crit (Seller ID A3DDSCP3ACKEWO)**

16.     Prior to filing the Complaint, Plaintiffs purchased counterfeit copies of twelve different Textbooks from Defendant Mazrui's Online Storefront, Huge Crit.  Like several other Defendants in this case, Mazrui violated the Injunctions by destroying his inventory of Plaintiffs' Textbooks – after he was served with the Injunctions.  Specifically, Mazrui requested that Amazon ship back to him some of the remaining copies of Plaintiffs' Textbooks in his inventory at Amazon's fulfillment center, which were subject to the Injunctions.  When asked about this

destruction, Mazrui, through counsel, did not offer an explanation or justification but instead said that the books were simply sent to the wrong address and are likely already destroyed.

17.     Despite Mazrui's violation of the Injunctions, Plaintiffs succeeded in inspecting a very small amount of inventory in his possession.  Plaintiffs received 4 Textbooks from Mazrui's personal inventory.  Plaintiffs determined that, at least, 1 out of the 4 Textbooks inspected is counterfeit.

**F.     Defendant Michael Pao d/b/a Matthew's Book Store (Seller ID A2DO668BPH25DT)**

18.     Defendant Pao may be among the most nefarious counterfeit sellers Plaintiffs have come across in the course of enforcing their rights.  Prior to filing the Complaint, Plaintiffs purchased six counterfeit copies of their Textbooks (five different titles) from Defendant Pao's Online Storefront, Matthew's Books Store.  Pao registered his Online Storefront with Amazon using a false name—"Matthew Watson"—and a false address in New York.  Plaintiffs understand that Pao did this because Amazon had shut down Pao's original storefront for selling counterfeit batteries and headphones.  Accordingly, Pao purchased his Online Storefront from a third party who was selling Amazon accounts.  In response to a bank subpoena, Plaintiffs determined that Matthew Watson was not the account operator, and that Pao was receiving proceeds from Pao's Online Storefront, which indicate that Pao actually lives in Chino, California.

19.     Pao initially ignored this lawsuit, only contacting Plaintiffs' counsel in May 2018 after his bank account was frozen pursuant to the preliminary injunction.  Then, through counsel, Pao falsely told Plaintiffs that he did not operate any other online storefronts, that he had no more inventory, and misrepresented his sales of Plaintiffs' Book.

20.     Pao had plenty of remaining inventory, all of which he continued to sell on a storefront on eBay, mikeypao.  He did this despite having been served with the Complaint and the

Injunctions in this case.  Plaintiffs purchased three additional counterfeit copies of their Textbooks from Pao's eBay storefront in July 2018, long after the Injunctions had issued.  Plaintiffs subpoenaed PayPal, Inc., the payment processor for purchases from mikeypao and confirmed that Defendant Pao operates the storefront.  Plaintiffs ultimately learned from Pao's counsel that he sold, at least, 49 Textbooks on eBay after the Injunctions were issued.

**G.    Defendant Nidia Espinoza d/b/a Nidiiz (Seller ID AXULVU20BNHVF)**

21.    Prior to filing the Complaint, Plaintiffs purchased counterfeit copies of seven different Textbooks from Defendant Espinoza's Online Storefront, Nidiiz.  Espinoza claimed to have no additional inventory and provided no concrete evidence concerning her sourcing of textbooks.

**H.    Defendant Manish Kumar Singh d/b/a STAY SMART (Seller ID A3GO8CXMLXUW0P) (a/k/a "Max Den" and "Shyam")**

22.    Prior to filing the Complaint, Plaintiffs purchased nine counterfeit copies of their Textbooks (five different titles) from Defendant Singh's Online Storefront, STAY SMART.  Singh registered his Online Storefront with Amazon using a false name, "Max Den."  It was only because Plaintiffs obtained records associated with the bank account linked to and receiving proceeds from Singh's Online Storefront that Plaintiffs were able to uncover Singh's true name.

23.    Despite having been served with this Court's Injunctions, Singh destroyed his inventory of Plaintiffs' Textbooks.  Specifically, like other Defendants in this case, Singh instructed Amazon to ship back to him some of the remaining copies of Plaintiffs' Textbooks in his inventory at Amazon's fulfillment center, which were subject to the Injunctions.

24.    Notwithstanding, Plaintiffs succeeded in inspecting what remained of his inventory of Plaintiffs' Textbooks in Amazon's fulfillment center.  Plaintiffs received 116 Textbooks from Singh's Amazon inventory.  Plaintiffs determined that all 116 inspected (100%) are counterfeit.

I.    **Defendant Yaroslav Iakovin d/b/a United TwinStar (Seller ID A3HUO8588XNGTY)**

25.    Prior to the filing of the Complaint, Plaintiffs purchased eight counterfeit copies of their Textbooks (six different titles) from Iakovin's Online Storefront, United TwinStar.  Iakovin violated the Injunctions issued by the Court in this case by destroying his inventory of Plaintiffs' Textbooks.  Despite being served with the Injunctions, Iakovin instructed Amazon to destroy the remaining copies of Plaintiffs' Textbooks in his inventory at Amazon's fulfillment center, which were subject to the Injunctions.  Despite Iakovin's violation of the Injunctions, Plaintiffs succeeded in inspecting what remained of his inventory of Plaintiffs' Textbooks in Amazon's fulfillment center.   Plaintiffs received 132 Textbooks from Iakovin's Amazon inventory.   Plaintiffs determined that all 132 Textbooks inspected (100%) are counterfeit.

26.    The results of Plaintiffs' inspection of the Textbooks remaining after Defendants' violation of the Injunctions illustrate the scope of Defendants' counterfeiting activity.  Indeed, 95% of the Textbooks (612 of 647) that Plaintiffs received from Amazon inventory held on behalf of Defendants were found to be counterfeit.

## DAMAGES

27.    As set forth in the Memorandum of Law in Support of Plaintiffs' Motion for Default Judgment and Permanent Injunction, Plaintiffs have elected to seek statutory damages for Defendants' copyright and trademark infringement.  Under the Copyright Act, a court may award statutory damages for copyright infringement of $750 to $30,000 per copyright infringed, and up to $150,000 per copyright infringed in the case of willful infringement.  17 U.S.C. § 504(c).  Under the Lanham Act, a court may award statutory damages for trademark infringement of $1,000 to $200,000 per counterfeit mark per type of good sold, and up to $2,000,000 per mark in the case of willful infringement.  15 U.S.C. § 1117(c).

28.     Plaintiffs purchased 67 counterfeit copies of their textbooks (across 42 different titles) from Defendants' Online Storefronts.  Attached hereto as **Exhibit 1** is a chart, created at my instruction, that identifies, by Defendant, the statutory damages Plaintiffs seek.  Exhibit 1 also identifies each copyright and trademark infringed by each Defendant.  This information was also provided to the Court in Exhibits A and B to the Amended Complaint.

29.     As detailed in Exhibit 1, Plaintiffs seek damages against each Defendant separately with the exception of Defendants Vijay Kumar and Anita Rain Rani, who operated the HEAVYHOUSE-BOOKS Online Storefront jointly.  Plaintiffs seek joint and several liability for damages against only Defendants Vijay Kumar and Anita Rain Rani.

30.     Also, as detailed in Exhibit 1, for each Defendant and their respective Online Storefront, and for each textbook title infringed by such Defendant, Plaintiffs elect to recover statutory damages under the Copyright Act for copyright infringement *or* under the Lanham Act for trademark infringement.  Thus, Plaintiffs do not seek statutory damages under both the Copyright Act and the Lanham Act for any one copyrighted work infringed by a particular Defendant.

31.     In addition, while some of Plaintiffs' trademarks are protected by multiple registrations, as indicated in Exhibit 1, Plaintiffs seek statutory damages per imprint for each Defendant, not per registration.

32.     Plaintiffs seek statutory damages for willful infringement for certain Defendants as detailed in Exhibit 1.  For such Defendants, Plaintiffs seek $150,000 per copyright infringement and $2,000,000 per trademark infringement.  For the remaining Defendants (Nidia Espinoza and Vijay Kumar and Anita Rani, Plaintiffs seek $30,000 per copyright infringement and $200,000 per trademark infringement.  Accordingly, Plaintiffs seek statutory damages totaling $42,810,000 for

Defendants' willful copyright and trademark infringement.  These damages are broken down by Defendant/Online Storefront as follows:

| Defendants | Copyright Damages | Trademark Damages | Total Damages |
|---|---|---|---|
| Imran Awan | $150,000 | $4,000,000 | $4,150,000 |
| Amro T. Awwad | $600,000 | $4,000,000 | $6,400,000 |
| Rong Li | $450,000 | $6,000,000 | $6,450,000 |
| Anita Rani and Vijay Kumar | $90,000 | $400,000 | $490,000 |
| Ammar A. Mazrui | $1,350,000 | $6,000,000 | $7,350,000 |
| Michael Pao | $300,000 | $6,000,000 | $6,300,000 |
| Nidia Espinoza | $120,000 | $600,000 | $1,050,000 |
| Manish K. Singh | $300,000 | $6,000,000 | $6,300,000 |
| Yaroslav Iakovin | $450,000 | $6,000,000 | $6,450,000 |
| **TOTAL** | **$3,810,000** | **$39,000,000** | **$42,810,000** |

*See* Exhibit 1.

33.     Plaintiffs' request for an award of statutory damages does not require the Court to conduct an evidentiary hearing.  Courts have awarded damages post-default without an evidentiary hearing based on affidavits submitted by the plaintiff.  *See Church & Dwight Co. v. Kaloti Enters. of Mich., L.L.C.*, 697 F. Supp. 2d 287, 295 (E.D.N.Y. 2009) ("Where the issue is statutory damages, inquest by paper record is particularly appropriate"); *Rolex Watch U.S.A., Inc. v. Brown*, No. 01-Civ-9155 (JGK), 2002 WL 1226863, 2002 U.S. Dist. LEXIS 10054, at *5 (S.D.N.Y. June 5, 2002) ("Here, of course, the issue is statutory damages, making it even more

appropriate to hold the inquest on a paper record."); *Cengage Learning, Inc. v. Doe 1 d/b/a bargainsofmaine,* Case No. 1:18-cv-403-RJS, Def. J. and Perm. Inj. at 5-6 (S.D.N.Y. May 11, 2018) (ECF No. 52) (awarding statutory damages without an inquest); *McGraw-Hill Global Educ. Holdings LLC v. Peng,* Case No. 1:17-cv-6224-RJS, Def. J. and Perm. Inj. at 4 (S.D.N.Y. Jan. 5, 2018) (ECF No. 58) (same); *McGraw-Hill Global Educ. Holdings LLC v. Jarrad,* No. 15-CV-2579-VEC, Def. J. and Perm. Inj. at 3 (S.D.N.Y. Jan. 8, 2016) (ECF No. 52) (same); *see also Tamarin v. Adams Caterers, Inc.,* 3 F.3d 51, 54 (2d Cir. 1993) (finding it unnecessary to hold a hearing to assess post-default damages where the court relied on affidavits and documentary evidence). Therefore, a hearing to award statutory damages is not necessary.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 28th day of September, 2018 in Washington, D.C.